The STATE of Texas and the City of
Rosenberg, Texas, Appellants

v.

Badruddin BHALESHA and Samina
Bhalesha, Appellees.

No. 14–08–00098–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 6, 2008.

Lisa Marie Nieman, Clint Alfred Harbour, Austin, Leonard Schneider, Houston, TX, for appellants.

Richard L. Tate, Amanda Leigh Richards, Richmond, TX, for appellees.

Panel consists of Justices YATES, ANDERSON, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

Appellants, the State of Texas ("the State") and the City of Rosenberg, Texas ("the City"), bring this interlocutory appeal challenging the trial court's order denying their pleas to the jurisdiction in a suit for inverse condemnation brought by appellees, Badruddin and Samina Bhalesha ("the Bhaleshas"). We reverse the trial court's order and render judgment granting appellants' pleas to the jurisdiction.

## I. BACKGROUND

The Bhaleshas own and previously operated the Whitehouse Supermarket ("the supermarket"), a grocery store in Rosenberg, Texas. The supermarket was situated at the northeast intersection of Avenue G and former First Street (currently FM 723), with Avenue G abutting its north side, former First Street abutting its east side, and its parking lot fronting Avenue G.[1] To reach Avenue G, traffic turned from either First Street or what was then FM 723 (now Houston Street), immediately to the west of and parallel to First Street. Although the supermarket did not have its own parking area on First Street, customers could park in the street's public parallel parking spaces on the east side of the supermarket.

On November 8, 2002, the Bhaleshas and Jaina Enterprises, Inc.[2] sued the State and the City following construction of an overpass that they alleged materially and substantially impaired access to the supermarket, and for which they sought damages for the diminution in the value of their property. The overpass, which was constructed to ease traffic flow over the train tracks running parallel to Avenue G, converted former First Street into current FM 723 (hereinafter "FM 723"). Because there was no longer an at-grade intersection for Avenue G and FM 723, Avenue G had to be barricaded, thereby cutting Avenue G in half and creating cul-de-sacs on either side of FM 723. As a result, traffic traveling west on Avenue G or on FM 723 had to use U.S. 90A (one block south of and parallel to Avenue G) and Houston Street (one block west of FM 723 and perpendicular to Avenue G) to reach the supermarket. Further, traffic traveling on FM 723 could no longer park on the east side of the supermarket. However, ingress and egress to the supermarket via Avenue G remained unaffected.

In their petition, the Bhaleshas and Jaina Enterprises, Inc. alleged that the construction of the overpass materially and substantially impaired access to their property and, thus, constitutes a compensable taking under article I, section 17 of the Texas Constitution. The State and the City each filed a plea to the jurisdiction challenging the trial court's subject matter jurisdiction to hear the Bhaleshas' claims. Following a hearing, the trial court granted appellants' pleas as to the corporate plaintiff, Jaina Enterprises, Inc., but de-

---

1. A map of the location is attached as an appendix.

2. The Bhaleshas own Jaina Enterprises, Inc. ("Jaina"), a Texas corporation, through which they operated the Whitehouse Supermarket.

nied the pleas as to the Bhaleshas. Appellants now appeal that denial pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 2008).

## II. STANDARD OF REVIEW

■■■■ A plea to the court's jurisdiction challenges a trial court's authority to determine the subject matter of a controversy. *See State v. Holland*, 221 S.W.3d 639, 642 (Tex.2007); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). Subject matter jurisdiction is essential to a court's authority to act and, as such, cannot be waived. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 448 n. 2 (Tex.1996). The plaintiff bears the burden to plead facts affirmatively demonstrating subject matter jurisdiction. *See Holland*, 221 S.W.3d at 642; *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Upon a finding that the trial court lacks subject matter jurisdiction, the court must dismiss the suit. *Jansen*, 14 S.W.3d at 431. A plea to the jurisdiction raises a question of law and is reviewed de novo on appeal. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007); *Holland*, 221 S.W.3d at 642. When reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the plaintiff. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004).

■■■■ Governmental immunity from suit defeats a trial court's subject matter jurisdiction and, thus, is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999). If a plaintiff fails to plead a cause of action for which sovereign immunity has been waived, the trial court has no subject matter jurisdiction. *See id.* at 638. However, although sovereign immunity generally protects the State and certain governmental units from lawsuits for monetary damages, it offers no shield against an inverse condemnation claim brought under article I, section 17 of the Texas Constitution, which waives immunity for the taking, damaging, or destruction of property for public use and authorizes compensation for such destruction. *See id.* at 638; *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *see also Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001).

■■■■ A plea to the jurisdiction can challenge either the pleadings or the existence of jurisdictional facts. *See Miranda*, 133 S.W.3d at 226–27.[3] When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *Id.* at 227; *GAR Assocs. III, L.P. v. State*, 224 S.W.3d 395, 400 (Tex.App.-Houston [1st Dist.] 2006, no pet.). If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 227–28. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.*

## III. ANALYSIS

Appellants contend the trial court erred in denying their pleas to the jurisdiction because construction of the FM 723 overpass does not materially and substantially impair access to appellees' property. Specifically, the State argues that there is no

---

3. When a plea challenges a plaintiff's pleadings, the determination turns on whether the pleader has alleged sufficient facts to demonstrate the court's subject matter jurisdiction over the matter. *Miranda*, 133 S.W.3d at 226.

such impairment because the Bhaleshas retain access to Avenue G, the only street that was accessible from their parking lot prior to the construction of the FM 723 overpass. In two sub-parts, the City contends that (1) requiring traffic to travel a more circuitous route to gain access to a property from a public road abutting the property does not constitute a material and substantial impairment as a matter of law and (2) the creation of a cul-de-sac is not a material and substantial impairment of access as a matter of law. Appellees argue that the substance of appellants' arguments reaches the merits of the case and, therefore, should not be considered on appeal. However, they assert that if we determine review of appellants' arguments is appropriate, the trial court properly denied appellants' pleas to the jurisdiction because access to their property has been materially and substantially impaired.

### A. Jurisdiction

 As a preliminary matter, the Bhaleshas argue that appellants' central argument—that the construction of FM 723 has not impaired access to their supermarket but merely requires traffic to travel a circuitous route to access the property—is a question on the merits of the case and, as such, goes beyond the narrow jurisdictional issue before us. Thus, they claim, appellants' argument cannot be properly considered on interlocutory appeal. This argument is without merit.

In *Texas Department of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004), the Texas Supreme Court addressed a plea to the jurisdiction in which undisputed evidence implicated both the subject matter jurisdiction of the court and the merits of the case. The court concluded that where the plea challenges the existence of jurisdictional facts, a reviewing court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just

as the trial court is required to do. *See id.* Here, because appellants' pleas to the jurisdiction—which include a circuity-of-travel argument—implicate the subject matter jurisdiction of the trial court as well as the merits of the case, we will consider relevant evidence necessary to resolve the jurisdictional issues raised.

### B. Inverse Condemnation

 To recover on an inverse condemnation claim, a property owner must establish that (1) the State or other governmental entity intentionally performed certain acts, (2) resulting in the taking, damaging, or destruction of its property, (3) for public use. *Steele,* 603 S.W.2d at 788–92; *GAR Assocs.,* 224 S.W.3d at 401. Whether particular facts are enough to constitute a taking is a question of law. *GAR Assocs.,* 224 S.W.3d at 401.

 An abutting property owner possesses an easement of access that is a property right. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996) (citing *DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965)). This easement is not limited to a right of access to the system of public roads. *Id.* A landowner with an easement of access is entitled to compensation through an inverse condemnation claim whenever the access is "materially and substantially impaired." *Id.* at 10 (citing *City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex. 1969)); *GAR Assocs.,* 224 S.W.3d at 401. This includes compensation for the diminution in value of the property resulting from a loss of access. *See Heal,* 917 S.W.2d at 10; *DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965). However, damages that result to property by virtue of traffic being required to travel a more circuitous route to reach the property in question are not compensable and are not the result of a material and substantial impairment of

access. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988).

■■■ Here, the relevant jurisdictional facts are largely undisputed. A review of the record reveals that, prior to construction of the overpass, the supermarket abutted Avenue G and former First Street. Its parking lot, located in front of the store, fronted Avenue G.[4] After construction, Avenue G was barricaded and cul-de-sacs were created on either side of the current FM 723, thereafter requiring traffic traveling west on Avenue G or on FM 723 to travel a more circuitous route (one or two more blocks) to reach the supermarket by using U.S. 90A and Houston Street.[5] Also, although traffic traveling on FM 723 could no longer park in public parking spaces on the east side of the supermarket, the supermarket's frontage on Avenue G, including its parking lot, remained unaffected.

Appellants contend that there has not been a material and substantial impairment of access to the Bhaleshas' property. In support of their position, they assert that (1) the Bhaleshas retain access to a two-way public street, Avenue G, which is the only access their store had prior to the construction project at issue, (2) although some of the supermarket's patrons may have to take a more circuitous route to reach the store, such circuity of travel is not a compensable loss, (3) though traffic

no longer passes directly in front of the property, property owners have no vested interest in traffic flow under Texas law, and (4) the creation of a cul-de-sac does not entitle a property owner to compensable damages as a matter of law. Appellees argue that access to their property has been materially and substantially impaired because one access point, former First Street, was closed entirely and the only remaining access point, Avenue G, has been materially and substantially affected by construction of the cul-de-sacs. While appellees recognize that they still have access to Avenue G, they argue that the remaining access is unreasonable.

In support of their contention that the construction materially and substantially impaired access to their property, appellees rely primarily on *DuPuy v. City of Waco*, 396 S.W.2d 103 (Tex.1965) and *Lethu Inc. v. City of Houston*, 23 S.W.3d 482 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). *DuPuy*, the seminal case on impairment of access, involved the City of Waco's construction of a viaduct along its existing South 17th Street. 396 S.W.2d at 104. Prior to construction of the viaduct, the property at issue in that case fronted South 17th Street and sided on an alley connected to Franklin Avenue. *Id.* at 104. After construction, which elevated South 17th Street above the property and left it in a cul-de-sac, DuPuy could only access

---

4. The parties differ in their characterization of what access, if any, the property had to former First Street. While the State acknowledges in its brief that the supermarket had access to former First Street via the public parallel parking spaces used by its customers, it argues that *direct* access to former First Street never existed because the property never had a driveway accessing the street. The City contends that the supermarket never had access at all or a driveway connection to former First Street. Appellees contend that these statements are factually inaccurate. A review of the record reveals that although the supermarket did not have its own parking lot

adjacent to former First Street, customers could use the public parallel parking spaces on former First Street and then walk to the supermarket. Construing the pleadings in favor of the Bhaleshas, as we must do, we assume that former First Street provided access to the supermarket via its public parking spaces. *See Miranda*, 133 S.W.3d at 226 (noting that appellate courts construe pleadings in favor of plaintiff when reviewing trial court's ruling on plea to jurisdiction).

5. The Bhaleshas added the language "TAKE THREE RIGHT TURNS" to their existing signage to notify customers of the new route.

his property by traversing underneath the viaduct between concrete support columns and dead-ending at his property. *Id.* The Texas Supreme Court concluded that construction of the viaduct had deprived DuPuy of reasonable access to his property. *Id.* at 110. In so holding, the court summarized the facts as follows:

Prior to the construction of the viaduct the property of DuPuy fronted on South 17th Street with full access thereto; now, South 17th Street is fourteen feet above the property and a concrete support forms a solid barrier to the immediate right of DuPuy's building. As a result, the building is left fronting on a cul-de-sac under the viaduct. It is generally held under analogous circumstances that a property owner left in a cul-de-sac is entitled to damages.

*Id.*

In *Lethu,* the City of Houston barricaded Fair Oaks Road in front of the plaintiff's convenience store. *Lethu,* 23 S.W.3d at 485. The barricade closed off Fair Oaks Road to through traffic between Lawndale and Wayside, a primarily residential area. *Id.* at 484. After installation of the barricade, the convenience store was situated on a cul-de-sac, accessible only from Wayside, but no longer from Lawndale. *Id.* at 485. The appeals court found a material and substantial impairment based on several factors. *Id.* at 487–88. First, the court found that the increased traffic created by the barricade posed a safety hazard. *Id.* at 487. There was also evidence showing that emergency vehicles had difficulty in bypassing the barricades. *Id.* at 488. Second, the court found that creation of the cul-de-sac was not a public improvement but rather a means of denying all access through the street. *Id.* ("This barricade can in no way be characterized as a public improvement, as it is nothing more than a permanent physical obstruction.")

Appellees contend that, just as the plaintiff in *DuPuy,* they are now positioned at the end of a cul-de-sac and no longer enjoy a free flow of traffic, thereby resulting in a material and substantial impairment of access. We disagree with appellees that the facts here rise to the level of impairment present in *DuPuy.* While it is true that in both cases cul-de-sacs were created on the streets to which the properties previously enjoyed full access, in *DuPuy* South 17th Street was elevated fourteen feet above the property, denying access to any public road and leaving an alleyway as the only remaining access. *See DuPuy,* 396 S.W.2d at 104. Here, however, Avenue G remains at an at-grade level, and the supermarket retains full ingress and egress to a public road. Also, traffic traveling on Avenue G is not required to maneuver between support columns to reach the supermarket. Further, while the *DuPuy* court noted that "[i]t is generally held under analogous circumstances that a property owner left in a cul-de-sac is entitled to damages," *id.* at 110, this language does not suggest that the creation of a cul-de-sac entitles a property owner to damages as matter of law, nor does the case law support such a proposition. *See, e.g., Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965) (finding construction of viaduct resulting in creation of cul-de-sac and closure of one public road, where access remained to other public road, did not constitute material and substantial impairment); *City of Grapevine v. Grapevine Pool Rd. Joint Venture,* 804 S.W.2d 675, 677–78 (Tex.App.-Fort Worth 1991, no writ) (concluding that creation of cul-de-sac and barricading of public road did not amount to material and substantial impairment where property retained unobstructed frontage on other public road). Moreover, the Bhaleshas' contention that the access to their property has been materially and substantially impaired because they

no longer enjoy a free flow of traffic in front of their supermarket is without merit. An abutting property owner does not have a vested interest in the traffic that passes in front of his property. *See Du-Puy*, 396 S.W.2d at 109; *see also State v. Schmidt*, 867 S.W.2d 769, 774 (Tex.1993) (concluding that landowners are not entitled to compensation based on diversion of traffic, reduced visibility from passing traffic, or circuity of travel).

Appellees also argue that the circumstances in *Lethu* are similar to those here because in both cases the properties were left abutting a cul-de-sac and the barricades erected were intended to deny all access through the street. However, we find the facts in *Lethu* differ significantly from the facts of the instant case. Here, the record shows, and appellees do not dispute, that the construction of the FM 723 overpass was designed to improve the road and ease traffic flow over the train tracks running parallel to Avenue G. By contrast, the court in *Lethu* found that the barricade could "in no way be characterized as a public improvement, as it is nothing more than a permanent physical obstruction" that is "intended to deny all access through the street." *Lethu*, 23 S.W.3d at 488. Also, while the court in *Lethu* found that the barricade posed a safety hazard and that emergency vehicles had difficulty in bypassing the barricades, there is nothing in the record before us showing a similar concern with regard to construction of the overpass.

We are mindful that the issue of whether reasonable access remains is not to be fragmented to focus only on the closed access point without considering the remaining access points. *See City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 66 (Tex.2007). Thus, while the Bhaleshas' customers were able to park in the public parking spaces located on former First Street and then walk to the supermarket prior to construction, we cannot consider only whether that access point used by those customers will be closed. *See id.* Rather, we must also consider the existence of remaining access, namely, the unaffected ingress and egress to the supermarket via Avenue G. Closing an access point and merely causing diversion of traffic or circuity of travel does not result in a compensable taking. *Id.* at 66–67.

Appellees, however, urge us to focus on the Texas Supreme Court's statement in *City of San Antonio* that "[w]e have held that access to a business was not materially and substantially impaired when one access point was closed, but another access point on a public street **remained unaffected.**" *Id.* at 66 (emphasis added). Appellees argue that because their only remaining access via Avenue G has been severely affected by barricades on either side of FM 723, there has been a material and substantial impairment. We are not persuaded. In *City of San Antonio*, the alleged taking involved the blocking of access from a private business driveway to a city street. *Id.* at 61. The court noted that "[i]f the access to [the street] is closed, at least six points of egress and ingress along the I-10 access road will remain at the front of the business park." *Id.* at 66. Here, the supermarket's access point on Avenue G has not been affected by the barricades on FM 723; rather, it is the route which traffic must take to reach the supermarket that has been affected. As a result of the construction, traffic would be required to travel an additional one or two blocks to arrive at the supermarket. However, as noted above, property owners are not entitled to compensation arising from a diversion of traffic, reduced visibility from passing traffic, or circuity of travel. *See id.* at 66–67 (finding reduction in lease rates resulting from traffic being required to travel more circuitous route to access business park non-

compensable); *Schmidt,* 867 S.W.2d at 774.

We also find the decisions in *Archenhold* and *City of Grapevine* to be instructive. In *Archenhold,* the companion case to *DuPuy,* the court found that construction of the South 17th Street viaduct did not deprive the property owner of reasonable access. *See* 396 S.W.2d at 114. Located at the intersection of South 17th Street and Franklin Avenue, the property accessed two public roads and a public alley. *Id.* at 113. After construction of the viaduct, the building accessed only one public road, Franklin Avenue, and two alleys. *Id.* Adopting the rule from New York courts, the court concluded that "one of two public streets may be closed without compensation to an abutting landowner if the remaining street furnishes suitable means of access." *Id.* at 114. The court reasoned that because Archenhold retained access to one public street, the property was not materially and substantially impaired. *See id.*

In *City of Grapevine,* the plaintiff owned a tract of property at the intersection of State Highway 26 and Pool Road. 804 S.W.2d at 676. In an effort to manage traffic flow, the City of Grapevine re-routed a portion of Pool Road and created a cul-de-sac at the end of the road. *Id.* at 676–77. Plaintiff sued, alleging that the barricading of Pool Road along with the creation of a cul-de-sac amounted to a material and substantial impairment of his access. *Id.* at 677. The appeals court noted that "[o]ne of two public streets may be closed without compensation to abutting landowners if the remaining street furnishes a suitable means of access to the piece of property." *Id.* at 678 (citing *Archenhold,* 396 S.W.2d at 114). The court determined that the plaintiff's property retained unobstructed frontage along SH 26, thus furnishing a suitable means of access to the property. *Id.* The court concluded that because the property "was never without access to a public road," the property had not suffered a material and substantial impairment. *Id.*

Similarly, the Bhaleshas retain unobstructed frontage along Avenue G, thus furnishing a suitable means of access to the supermarket. Because they have never been without access to a public road, their access has not been materially and substantially impaired. *See also Burris v. Metro. Transit Auth.,* 266 S.W.3d 16, 24 (Tex.App.-Houston [1st Dist.] Aug. 14, 2008, no pet. h.) (concluding that because appellants' property retained full access to one public road and egress to other abutting road, closure of appellants' second entrance to latter road did not amount to material and substantial impairment).

While we agree with the Bhaleshas that access to their property has been impaired, impairment alone is insufficient for a compensable taking. Instead, appellees must show that the impairment of access is material and substantial. *See City of Waco v. Texland Corp.,* 446 S.W.2d 1, 2 (Tex.1969); *see also Archenhold,* 396 S.W.2d at 114 (holding diminishment of means of access is not compensable provided suitable access remains). We hold that the evidence and pleadings on file conclusively establish, as a matter of law, that appellees' access to their property has not been materially and substantially impaired as a result of the construction of the FM 723 overpass. Accordingly, the trial court erred in denying appellants' pleas to the jurisdiction.

## IV. CONCLUSION

We conclude the trial court erred in denying appellants' pleas to the jurisdiction. We reverse the trial court's order and render judgment granting appellants' pleas to the jurisdiction.

## APPENDIX