Affirmed in Part, Reversed and
Remanded in Part, and Opinion filed March 17, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00386-CV



 

PAUL SMITH, JOHN ALLEN, MARIE MICHELLE CHRISTIE, ANNE
LESLIE CLARKSON, MARGARET FUCHS, ROBERT FUCHS, GWENDOLYN GRIFFIN, JEFFREY
HAGEN, FRANK BENNETT HARVIE, JR., DORCAS KAY HORTON, ROBERT HORTON, JO RENEE
LANDERS, CAREY LIVINGSTON, PATRICIA LOGAN, ROBERT LOGAN, MARIE A. MIXON,
WILLIAM J. MIXON, JR., TIMOTHY
GAMBLE, VICTORIA M. GAMBLE, GEORGE A. NAJERIAN, and HARLEN L. SPERRY,
Appellants

V.

CITY OF LEAGUE CITY, TEXAS, Appellee

 



On Appeal from the 212th
District Court 

Galveston County, Texas

Trial Court Cause No. 07-CV-0817



 

OPINION

Appellants, Paul Smith, John Allen, Marie Michelle Christie, Anne Leslie Clarkson,
Margaret Fuchs, Robert Fuchs, Gwendolyn Griffin, Jeffrey Hagen, Frank Bennett
Harvie, Jr., Dorcas Kay Horton, Robert Horton, Jo Renee Landers, Carey
Livingston, Patricia Logan, Robert Logan, Marie A. Mixon, William J. Mixon,
Jr., Timothy Gamble, Victoria M. Gamble, George A. Najerian, and Harlen L.
Sperry, appeal the trial
court’s order granting the City of League City’s (“League City”) plea to the
jurisdiction and dismissing appellants’ claims for lack of jurisdiction.  We
affirm in part and reverse and remand in part.

I.   Background

Appellants
are homeowners in Glen Cove, a single-family home subdivision located in League
City.  A canal runs east-to-west through Glen Cove, separating the subdivision
into northern and southern sections.  At one time, Seminole Drive Bridge (the
“bridge”) spanned the canal, providing access between the northern and southern
sections.  However, in June 2003, the Texas Department of Transportation
(“TxDOT”) recommended closure of the bridge due to deterioration.  Emails
indicate that League City informed TxDOT there was no “public street” exit for
residents of the northern section of Glen Cove.  Nevertheless, TxDOT considered
“the bridge unsafe at any loading.”  In August 2003, the city council for
League City approved “a declaration of emergency closure of the bridge . . .
.”  League City sent letters to citizens notifying them that (1) the bridge would
be closed, (2) TxDOT anticipated bidding on a construction project to replace
the bridge would occur before the end of 2003, and (3) the construction project
would commence in the first quarter of 2004 and last approximately one year. 
The bridge was closed shortly thereafter.

In
August 2004, League City received a letter from representatives of MB Harbour,[1]
a private developer, proposing a development project for the canal area.  MB
Harbour required permanent removal of the bridge and “access to, or ownership
of,” the canal as conditions to initiation of the project.  League City
requested that TxDOT postpone bidding for the bridge-construction project in
order to allow League City to consider cancellation of the project.  In August
2005, TxDOT informed League City that cancellation of the bridge project would
necessitate reimbursement to TxDOT of its expenses incurred in connection with
the bridge.  League City responded by affirming its decision to proceed with
the bridge project.  However, after Texas Genco, LP[2]
(which claimed it was the owner of the canal) offered to donate the canal to
League City, League City once again requested that TxDOT postpone bidding.  

League
City passed a resolution approving the purported donation of the canal by Texas
Genco, LP to League City and terminating the bridge project, conditioned upon
the execution of a development agreement between League City and MB Harbour. 
In February 2006, League City and MB Harbour entered into a development
agreement in which League City consented to removal of the bridge.  As a
condition of the agreement, MB Harbour agreed to indemnify League City for all
costs it would pay TxDOT to terminate the bridge project.  The bridge was
demolished in October 2006.  In December 2006, League City purported to deed
the land underlying the bridge to MB Harbour.  However, all parties in the case
under review agree that this deed is void.  

In July
2007, appellants sued League City, complaining of League City’s failure to
reconstruct the bridge and its conveyances of canal-area property.  In their
third-amended petition, appellants allege claims for violations of the “just
compensation” and “due course of law” provisions of the Texas Constitution and promissory
and equitable estoppel.  Appellants also seek declaratory relief.  League City
filed a plea to the jurisdiction in which it contended that the trial court
lacked subject-matter jurisdiction over appellants’ claims.  Following an
evidentiary hearing, the trial court granted League City’s plea and dismissed
all of appellants’ claims with prejudice.

II.   Plea to the Jurisdiction

We
review the trial court’s ruling on a plea to the jurisdiction de novo.  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004). 
In a plea to the jurisdiction, a party may challenge either the pleadings or
existence of jurisdictional facts.  Id. at 226–27;
see also Rebecca Simmons & Suzette Kinder Patton, Plea to the
Jurisdiction: Defining the Undefined, 40 St. Mary’s L.J. 627, 651–52
(2009).

When a
defendant challenges the plaintiff’s pleadings, the court’s determination turns
on whether the pleader has alleged facts sufficient to demonstrate
subject-matter jurisdiction.  Miranda, 133 S.W.3d
at 226.  To make this determination, courts should glean the pleader’s intent
and construe the pleadings liberally in favor of jurisdiction.  Id.  If
the pleadings do not contain facts sufficient to affirmatively demonstrate the
trial court’s jurisdiction, but do not affirmatively demonstrate incurable
defects in jurisdiction, the issue is one of pleading sufficiency and
plaintiffs should be afforded an opportunity to amend.  Id. at 226–27. 
If the pleadings affirmatively negate jurisdiction, a plea may be granted
without allowing plaintiffs an opportunity to amend.  Id. at 227.  The
opportunity to amend pleadings that are insufficient to establish, but do not
affirmatively negate, jurisdiction arises after a court determines the
pleadings are insufficient.  White v. Robinson, 260 S.W.3d 463,
475–76 (Tex. App.—Houston [14th Dist.] 2008, pet. granted) (citing Tex.
A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 839–40 (Tex. 2007)).

When a
defendant challenges the existence of jurisdictional facts, we consider
relevant evidence submitted by the parties.  Miranda, 133 S.W.3d at
227.  We take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts arising from such evidence in the
nonmovant’s favor.  Id. at 228.  If the relevant evidence is undisputed
or a fact question is not raised relative to the jurisdictional issue, the
trial court rules on the plea to the jurisdiction as a matter of law.  Id. 
If the evidence creates a fact question regarding the jurisdictional issue, the
trial court may not grant the plea, and the fact issue will be resolved by the
fact finder.  Id. at 227–28.

III.   Governmental Takings

In their
first issue, appellants challenge the trial court’s dismissal of their takings
and due process claims.  Appellants first argue that the trial court erred by
dismissing their inverse condemnation claim in which they allege League City violated
Article I, Section 17 of the Texas Constitution by taking their property
without just compensation.  Tex. Const. art. I, § 17.  

A.   Appellants’
Real-Property Interest

Appellants
allege League City’s authorizing MB Harbour to destroy the bridge and taking
and leasing property on either side of the bridge to MB Harbour constituted
takings of private property for which League City owes appellants’ adequate
compensation pursuant to Article 1, Section 17.  League City argued in its plea
to the jurisdiction that appellants’ takings claim should be dismissed because
appellants do not own any property interest relative to Seminole Drive or the
bridge.

Governmental
immunity does not shield a municipality from an action for compensation under
the takings clause.  Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth., 282
S.W.3d 59, 61 (Tex. 2009).  The takings clause provides: “No person’s
property shall be taken, damaged, or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such
person.”  Tex. Const. art. 1, § 17(a).  Hence, to establish a takings claim, a
claimant must show a governmental actor (1) intentionally (2) took or damaged
property (3) for a public use.  State v. Holland, 221 S.W.3d 642, 643
(Tex. 2007).  Of course, the plaintiff must also have a compensable interest in
the property at issue.  Brownlow v. State, 251 S.W.3d 756,
760 (Tex. App.—Houston [14th Dist.] 2008), aff’d, 319 S.W.3d 649
(Tex. 2010).  Whether particular facts are sufficient to constitute a taking is
a question of law.  Id.  

All
parties acknowledge a 1928 plat memorializing the subdivision of Glen Cove
according to the “lines, streets, and lots” reflected on the plat.  The plat
included the following language: “I [the owner of the property] . . . do hereby
dedicate for use of property owners only, all boulevards, streets,
parks, and playgrounds as shown [on the plat].”  (emphasis added).  Accordingly,
appellants argue they are grantees of easements over the streets in Glen Cove,
including the portion of Seminole Drive located on the bridge.[3] 
League City argues that use of the word “dedicate” confirms its contention that
the roadways were intended to be public.

League
City correctly asserts that the law recognizes public dedications, but
not private dedications.  See Viscardi v. Pajestka, 576 S.W.2d
16, 19 (Tex. 1978) (citing Drye v. Eagle Rock Ranch, Inc., 364
S.W.2d 196, 204–05 (Tex. 1963)).  However, “the existence of a public
dedication is a question of fact.”  Id. at 17, 19.  Use of the term
“dedicate” is not dispositive of the issue.  See Russell v. City of Bryan, 919
S.W.2d 698, 703 (Tex. App.—Houston [14th Dist.] 1996, writ denied). 
Further, language in the plat specifying that the roads were to be used for
“property owners only” weighs in favor of a finding that the owner intended to
grant a private easement to Glen Cove property owners.  See Drye, 364
S.W.2d at 219 (op. on reh’g) (concluding property owners had implied easements
appurtenant over subdivision roads because plat included the following
language: “‘[T]he streets and easements shown on said map are for the sole and
exclusive use of . . . owners of the lots’”).

League
City further argues that certain testimony proves all roads in Glen Cove are
public.  At the hearing on League City’s plea, appellant Paul Smith testified
as follows:  

[Counsel
for League City:]  Okay, Mr. Smith.  Now, after 1928 however all of the roads
in the Glen Cove subdivision become public roads, right?

[Smith:] 
Sometime after that there [were] public dedications of roadways.

[Counsel
for League City:]  And the roadways were dedicated to the City of League City,
correct?

[Smith:] 
That’s not correct.  They were I believe dedicated to the county at the time.

[Counsel
for League City:]  That’s right.  Prior to that area being part of the City of
League City, correct?

[Smith:]  That’s my understanding.

[Counsel for League City:]  So, they were
dedicated to Galveston County, right?

[Smith:] 
There is a document that I have seen that shows a dedication to Galveston
County.  I questioned the chain of title on that dedication, but, yes, there
was a dedication in the early sixties to the county of a number of roadways
including Seminole bridge right of way.

[Counsel
for League City:]  And then the city incorporates the City of League City, took
over the jurisdiction of that area including Seminole Drive, correct?

[Smith:]  That’s what I believe, yes, sir.

[Counsel
for League City:]  And then after that up until you filed a lawsuit, well, even
since you filed a lawsuit the City of League City maintains every street and
roadway in Glen Cove subdivision, correct?

[Smith:]  That’s not correct.

Counsel for League City:]  Which ones
don’t they maintain[?]

[Smith:] 
What they don’t maintain, they never maintained the right of way of the bridge.

[Counsel
for League City:]  Listen to my question.  The streets, the roads, the City of
League City maintains them, don’t they, Mr. Smith?

[Smith:]  They do now.

[Counsel for League City:]  They did in
2003, didn’t they?

[Smith:]  Yes.

[Counsel for League City:]  And they did
in 2000, didn’t they?

[Smith:]  Yes.

[Counsel
for League City:]  And those streets include a street called Seminole Drive,
right?

[Smith:]  That’s correct.

League
City contends the above testimony establishes that the Glen Cove roadways,
including Seminole Drive, were dedicated for public use during all times
material to the alleged takings.[4] 
We disagree.  Smith’s testimony regarding the alleged dedication was conclusory
and equivocal.  Specifically, Smith, who has been a real estate appraiser and
consultant for twenty-five years, stated that he questioned the chain of title relative
to the purported dedication.  Moreover, there is no document in evidence
supporting the contention that Glen Cove streets were dedicated for public use.[5]
 On this record, we conclude League City did not fulfill its burden to establish
conclusively that Seminole Drive was public at the time of the alleged takings.[6] 


Accordingly,
a fact issue remains regarding whether appellants owned a private easement over
Seminole Drive and the bridge.  Additionally, League City has not challenged
appellants’ allegations that League City took and leased property on either
side of the bridge to MB Harbour.  We hold the trial court erred to the extent
it dismissed appellants’ takings claim on the basis that appellants had no
property interest.  

 

B.   Standing

League
City also argued in its plea that appellants lack standing because their
alleged injuries are not specific, but apply to the general public.  

To prove
standing, a party must demonstrate that he “possesses an interest in a conflict
distinct from that of the general public, such that that defendant’s actions
have caused the plaintiff some particular injury.”  Williams v. Lara, 52
S.W.3d 171, 178 (Tex. 2001).  Standing is a question of law we determine de
novo.  Concerned Cmty. Involved Dev., Inc. v. City of Houston, 209
S.W.3d 666, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).  A
landowner suffers no compensable injury where the government has not physically
appropriated, denied access to, or otherwise directly restricted the use of the
landowner’s property.  Id. at 672.

Appellants
allege League City’s unconstitutional takings have caused them the following
harm: 

1) denied
many of the residents, including [appellants], from the necessary and emergency
ingress and egress to and from their homes; 2) caused confusion and delay to
emergency services and responders such as EMS, fire and police; 3) caused loss
of use of the neighborhood park by some of the residents by denying any
reasonable access; 4) denied long-standing access among neighborhood friends;
5) denied the protection of an evacuation route during flooding, storms and/or
hurricanes; 6) left a private road as the only way for homeowners (including
some [appellants]) on the north side of the Glen Cove canal to enter or leave
their subdivision, and 7) caused significant economic damages to Glen Cove
property owners, including [appellants], in lost property values and in loss of
use and enjoyment of certain aspects of their property.

All of these
complaints stem from the same fact: persons on the northern section of the Glen
Cove can no longer access the southern section without traveling a less-direct
route via Marina Way, a private road.  League City argues these are
noncompensable injuries because appellants’ only allegation is that ingress to
and egress from their homes has become more circuitous.  Under these unique
facts, we disagree.

 

It is
well settled that diminished value resulting from impaired access is
compensable only when access is materially and substantially impaired.  State
v. Dawmar Partners, Ltd., 267 S.W.3d 875, 878 (Tex. 2008) (per curiam)
(citing City of Waco v. Texland Corp., 446 S.W.2d 1, 2 (Tex. 1969)).  A
landowner with an easement of access is entitled to compensation through an
inverse condemnation claim when the access is “‘materially and substantially
impaired.’”  State v. Bhalesha, 273 S.W.3d 694, 698 (Tex.
App.—Houston [14th Dist.] 2008, no pet.) (quoting State v. Heal, 917
S.W.2d 6, 10 (Tex. 1996)).  Whether access has been materially and
substantially impaired is a threshold question of law reviewed de novo.  City
of San Antonio v. TPLP Office Park Props., L.P., 218 S.W.3d 60, 66 (Tex.
2007).  Generally, “damages that result to property by virtue of traffic being
required to travel a more circuitous route to reach the
property in question are not compensable and are not the result of a material
and substantial impairment of access.”  Bhalesha, 273 S.W.3d at
698–99; see also State v. Bristol Hotel Asset Co., 293 S.W.3d 170,
174 (Tex. 2009) (“[D]iminished access to a landowner’s remaining property
is not compensable so long as
reasonable access to the property remains.”).  Further, access to a plaintiff’s
property will usually not be materially and substantially impaired when access
to another public roadway remains.  See Bhalesha, 273 S.W.3d
at 702; see also Archenhold Auto. Supply Co. v. City of Waco, 396
S.W.2d 111, 114 (Tex. 1965) (“[O]ne of two public streets may be closed
without compensation to an abutting landowner if the remaining street furnishes
suitable means of access.”).  However, we have found no authority addressing
government compensation when a taking has relegated the plaintiff to only a private
means of access, such as alleged here.

We
believe a taking that leaves only a private roadway is significantly different from
a taking that leaves a public roadway because, in the former, there is
uncertainty concerning the complainant’s ability and right to access his
property via the private roadway, and this uncertainty could diminish the value
of a complainant’s property or cloud the title.  Although evidence indicates
appellants have been allowed to utilize Marina Way for ingress and egress since
the bridge was closed, there is no indication in the record regarding the
duration that Marina Way will be accessible.  Also unanswered by the pleadings
or evidence is whether the government has secured access on Marina Way for
appellants.  Under the facts alleged, appellants are at the mercy of the
private owner of Marina Way.  Accordingly, we hold appellants who live on the
north side of the canal have sufficiently alleged that access to their
properties has been materially and substantially impaired.  However, those
appellants living on the south side of the canal have continued ingress and
egress via a public road.  We conclude appellants who live in the southern
section of Glen Cove have not alleged facts sufficient to support their claim
that removal of the bridge resulted in a compensable injury.

Appellants request that we remand for
opportunity to replead if we determine their pleadings are not sufficient to
affirmatively demonstrate the trial court’s jurisdiction but do not
affirmatively demonstrate incurable defects in jurisdiction.  See Miranda,
133 S.W.3d at 226–27.  Although the general rule reflects a preference for
allowing amendment, a plaintiff may forfeit this opportunity through inaction. 
Tara Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564,
577 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  League City
challenged appellants’ standing to assert a claim for inverse condemnation
regarding League City’s alleged taking of the Seminole Drive Bridge.  By
failing to request permission to amend this claim after the trial court found
League City’s standing challenge meritorious, appellants forfeited the
opportunity to amend.  Id.  Therefore, we deny appellants’ request for
an opportunity to amend this claim relative to those appellants who live in the
southern section of Glen Cove.      

Nevertheless,
as part of their takings claim, appellants also allege that League City “leased
the property on either side of the Bridge, including property and/or easements
and rights of way owned by [appellants,] to MB Harbour for 99 years.”  This
allegation applies to all appellants.  League City did not specifically
challenge this part of appellants’ takings claim in its plea.  We cannot
determine from appellants’ pleadings whether League City’s ninety-nine-year
lease to MB Harbour resulted in a compensable injury.  However, the pleadings
do not affirmatively demonstrate incurable defects in the trial court’s
jurisdiction over such claim.  Because this particular aspect of appellants’
takings claim was not challenged by League City, but is determined to be
insufficient by this court sua sponte, appellants have not had a chance
to amend such claim to address the insufficiency we identify.  Thus, appellants
should have an opportunity to amend their pleadings relative to this claim.  See
Miranda, 133 S.W.3d at 226–27; see also Gatesco, Inc. Ltd. v. City of
Rosenberg, 312 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.]
2010, no pet.) (“Because appellants have had no opportunity to respond to
Rosenberg’s new argument concerning governmental immunity and appellants’
equitable claims, we find that appellants should be given an opportunity to amend
their pleadings to reflect whether the Overcharges were paid as a result of
fraud, mutual mistake of fact, or duress.”).

In sum,
we hold that (1) the trial court erred by dismissing appellants’ takings claim
regarding the bridge for those appellants who live north of the canal, (2) the
trial court did not err by dismissing appellants’ takings claim regarding the
bridge for those appellants who live south of the canal, and we deny
appellants’ request for an opportunity to amend this claim on remand, and (3)
the trial court erred by dismissing appellants’ takings claim regarding League
City’s ninety-nine-year lease to MB Harbour, and we grant appellants’ request
to amend this claim on remand.  Accordingly, we sustain in part and overrule in
part that portion of appellants’ first issue pertaining to their takings claim.

IV.   Due Course of Law

            In the second
part of their first issue, appellants argue that the trial court erred by
dismissing their claim that League City deprived them of property without due
course of law, in violation of Article I, Section 19 of the Texas Constitution. 
See Tex. Const. art. I, § 19.  As an initial matter, we note that
appellants did not assert a due process claim in their first-amended petition,
but instead asserted a claim for violation of the Texas Open Meetings Act
(“TOMA”).  League City’s plea to the jurisdiction was filed in response to the
first-amended petition, and League City staged an evidentiary attack against
the TOMA claim in its plea.  In their third-amended petition, appellants
dropped their TOMA claim and alleged that League City violated their due process
rights.  Hence, in its plea, League City never specifically challenged
appellants’ due process claims.  With this background, we proceed with the
following analysis.

Appellants
argue they “received neither procedural nor substantive due process from [League
City] . . . [because League City] took [appellants’] property and easement
rights without notice, hearing or compensation, gave [their property] to a
private developer for a private use, and then tried to hide this fact from
[appellants by] . . . lying to them about what had already happened.” 
Appellants also allege that League City failed to provide proper notice before allegedly
deeding the bridge or leasing property on each side of the bridge to MB
Harbour.

            We begin with
appellants’ procedural due process claim.  If an
individual is deprived of a property right, the government must afford an
appropriate and meaningful opportunity to be heard consistent with the
requirements of procedural due process.  Perry v. Del Rio, 67
S.W.3d 85, 92 (Tex. 2001); Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 939 (Tex. 1998).  Accordingly, a plaintiff alleging a
procedural due process takings claim must establish that he was deprived of
notice and an opportunity to be heard with respect to a decision affecting his
property rights.  Mayhew, 964 S.W.2d at 939.

As
mentioned above, League City presented evidence that it provided notice pursuant
to TOMA before it made decisions regarding the bridge and Seminole Drive.  However,
League City did not present argument or evidence that it afforded appellants an
opportunity to be heard with respect to such decisions.  Thus, we hold League
City did not conclusively establish that it provided procedural due process to
appellants.  

This
conclusion does not end our review of appellants’ procedural due process claim
because we are obliged to ascertain the existence of subject-matter
jurisdiction.  Texas Dept. of Transp. v. Olivares, 316 S.W.3d 89,
104 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  We note that appellants
seek monetary damages against a governmental entity for their due process claim. 
The due process provisions of the Texas Constitution do not imply a cause of
action for damages.  See Old S. Amusements, Inc. v. City of San
Antonio, No. 04-09-00466-CV, 2010 WL 2772444, at *3 (Tex. App.—San
Antonio July 14, 2010, no pet.) (mem. op.); see also City of Beaumont v.
Bouillion, 896 S.W.2d 143, 149 (Tex. 1995).  A due process claim in which
the plaintiff seeks monetary damages does not invoke the trial court’s
jurisdiction.  See Univ. of Tex. Sys. v. Courtney, 946 S.W.2d 464, 469 (Tex.
App.—Fort Worth 1997, writ denied).  Thus, the trial court did not err to the
extent it dismissed appellants’ due process claim for monetary damages.  

However,
appellants also request a declaration that League City’s alleged conveyance or gifting
of the bridge, authorization for MB Harbour to demolish the bridge, and execution
of a lease concerning property surrounding the bridge were invalid.[7] 
To the extent appellants seek a declaration that these actions were invalid
because League City failed to afford procedural due process, appellants have
sufficiently pleaded a waiver of governmental immunity and the trial court
erred by dismissing this claim.  See Gatesco Q.M., Ltd. v. City of Houston,
--- S.W.3d ---, No. 14-09-00176-CV, 2010 WL 4262061, at *9 (Tex.
App.—Houston [14th Dist.] Oct. 28, 2010, no pet.) (concluding plaintiff’s
requests for declaratory relief based on alleged constitutional violations
sufficiently pleaded a waiver of governmental immunity).

            We next
consider appellants’ substantive due process claim.  Appellants allege (and
evidence does not conclusively negate) that they were denied substantive due process
because League City took their property for a private purpose.  “‘One person’s
property may not be taken for the benefit of another private person without a
justifying public purpose, even though compensation be
paid.’”  Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 140–41 (Tex.
1977) (quoting Thompson v. Consol. Gas Co., 300 U.S. 55, 80 (1936)); see
also Whitfield v. Klein Indep. Sch. Dist., 463 S.W.2d 232,
235 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ.).  Accordingly, appellants
have sufficiently alleged that League City violated their substantive due process
rights.  As previously explained, appellants seek monetary damages for this
claim, which does not invoke the trial court’s jurisdiction.  However, they
also seek declaratory relief.  Accordingly, the trial court properly dismissed
appellants’ substantive due process claim for monetary damages, but erred to
the extent it dismissed appellants’ request for declaratory relief based on
League City’s alleged substantive due process violations.

We
recognize appellants’ inverse condemnation claim would fail if League City took
appellants’ property for a private purpose because a necessary element of such
claim is that the government has taken private property for a public use. 
See Holland, 221 S.W.3d at 643; Osburn v. Denton County, 124
S.W.3d 289, 293 (Tex. App.—Fort Worth, 2003, pet. denied) (explaining that
governmental taking of private property for private use may be declared void,
but does not waive immunity from suit for monetary damages).  However, in their
petition, appellants allege, “Whether [League City] had the Bridge demolished
and leased portions of Seminole Drive for a purely private use, a public use,
or combination of the two,” appellants’ rights under Article I, Sections 17 and
19 of the Texas Constitution were violated.  For jurisdictional purposes, we
liberally construe this language as asserting appellants’ inverse condemnation
and due course of law claims alternatively.  Accordingly, we sustain in part and
overrule in part that portion of appellants’ first issue relating to their due
process claims.

V.   Promissory and Equitable Estoppel

We next
address appellants’ second issue, challenging the trial court’s dismissal of
their promissory estoppel claim and purported equitable estoppel claim.  In
their promissory estoppel claim, appellants contend “[League City] repeatedly
promised the residents of Glen Cove, including [appellants,] that the Bridge
would be rebuilt.  [Appellants] relied on [League City’s] promise to rebuild
the Bridge to their detriment.”  Through this claim, appellants seek to enforce
League City’s alleged promise to rebuild the bridge.  

A promissory
estoppel claim is available when a promisee has acted to
its detriment in reasonable reliance on an otherwise unenforceable promise.  See
El Paso Healthcare Sys. Ltd. v. Piping Rock Corp., 939 S.W.2d 695, 698
(Tex. App.—El Paso 1997, writ denied).  Generally, a city may be estopped only
if it would not interfere with the city’s ability to perform any act that the
legislature has deemed, or that the court determines to be, a municipal
governmental function.  See City of White Settlement v. Super Wash, Inc., 198
S.W.3d 770, 777 (Tex. 2006).  The Texas Tort Claims Act includes a non-exclusive
list of municipal activities the legislature designated as “governmental
functions . . .  exercised by the municipality in the interest of the general
public,” including “street construction and design” and “bridge construction
and maintenance and street maintenance.”  Tex. Civ. Prac. & Rem. Code Ann. §
101.0215(a)(2)–(3) (West 2011).  Governmental functions encompass activities
that are closely related to or necessary for performance of the governmental
activities designated by statute.  See City of Houston v. Petroleum Traders
Corp., 261 S.W.3d 350, 356 (Tex. App.—Houston [14th Dist.] 2008,
no pet.).  League City argues that its decisions concerning the bridge were
closely related to the governmental function of “bridge construction and
maintenance.”

The present
situation is unique because appellants do not allege, and it is unclear from
the record, whether the bridge was private or public.  However, we agree that League
City’s decision not to rebuild the bridge—regardless of whether it was private
or public—is encompassed under the governmental function of “bridge
construction and maintenance.”[8] 
Additionally, League City’s actual motive for deciding not to rebuild the
bridge—whether for traffic regulation or to placate a private developer—is
inconsequential.  See City of San Antonio v. Butler, 131 S.W.3d
170, 177–78 (Tex. App.—San Antonio 2004, pet. denied) (“[A]ll activities
associated with the operation of one of the government functions listed in
section 101.0215(a) are governmental and cannot be considered proprietary,
regardless of the city’s motive for engaging in the activity.”).  Ordering League
City to comply with its alleged promise to rebuild the bridge would interfere
with its ability to perform a governmental function.  Accordingly, we conclude
that the trial court did not err by dismissing appellants’ promissory estoppel
claim for lack of jurisdiction.

Appellants
also rely on equitable estoppel, alleging that they “detrimentally relied on [League
City’s] false promises to a number of [appellants] that there were no plans to
demolish the Bridge.”  Specifically, appellants allege the mayor of League City
and another city official deliberately misinformed appellants, days before the
bridge was destroyed, that League City had not abandoned the bridge project and
there was no impending agreement with a private developer to demolish the
bridge.  On appeal, appellants argue League City should be equitably estopped
from asserting that it provided procedural due process because appellants did
not timely pursue an injunction in reliance on misrepresentations by city
officials.  We express no opinion on the applicability of such a theory in this
situation, but note that nothing in the trial court’s order granting League
City’s plea prevents appellants from pursuing this theory on remand.

However, it appears appellants also allege
an independent cause of action for equitable estoppel.  The merits of this purported
claim are not at issue in determining the trial court’s subject-matter
jurisdiction, and we presume for the sake of argument that this claim is valid.[9]
 When a political subdivision of the State is immune from suit under the
doctrine of governmental immunity, courts lack subject-matter jurisdiction over
the suit.  Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999).  Appellants have not identified and we are unaware of any statute in
which League City’s governmental immunity has been waived relative to the
purported equitable estoppel claim.  Additionally, the limited waiver of
governmental immunity available when a governmental entity prosecutes a claim
for money damages is not available as a matter of law because League City is
not pursuing recovery of a sum of money.  See Reata Constr. Corp. v. City of
Dallas, 197 S.W.3d 371, 376–77 (Tex. 2006).  Accordingly, we hold that the
trial did not err by dismissing this claim.  See Tex. Gov’t Code Ann. § 311.034 (West Supp. 2009) (providing
that a statute shall not be construed as a waiver of sovereign immunity unless
the waiver is effected by clear and unambiguous language); Tooke v. City of
Mexia, 197 S.W.3d 325, 332–33 (Tex. 2006).  Appellants’ second issue is
overruled.

VI.   Declaratory Judgment

Finally,
in their third issue, appellants contend the trial court erred by dismissing their
requests for declaratory relief.  First, appellants request a declaration that
League City’s “actions in giving away the Bridge which it did not own to
private developer MB Harbour, and allowing MB Harbour to demolish the Bridge
without following any required procedures were illegal, and did not advance any
legitimate governmental interest.”  As explained in the due process section
above, to the extent appellants seek a declaration that conveyance of the
bridge and surrounding property violated their constitutional rights to procedural
and substantive due process, they have sufficiently pleaded a waiver of
governmental immunity, and the trial court erred by dismissing their claim.  See
Gatesco, 2010 WL 4262061, at *9.

Second,
appellants request a declaration that a December 2006 deed in which League City
purported to convey the bridge structure and surrounding land to MB Harbour is
invalid.  However, in the course of this litigation, League City unambiguously conceded
that this particular deed is void.  A declaratory judgment is appropriate only
if a justiciable controversy exists as to the rights and status of the parties
and the controversy will be resolved by the declaration sought.  WesternGeco, L.L.C. v. Input/Output, Inc., 246
S.W.3d 776, 781 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  For a
justiciable controversy to exist, there must be a real and substantial
controversy involving a genuine conflict of tangible interests and not merely a
theoretical dispute.  Id.  Because League City has
judicially admitted that the deed is void, no justiciable controversy exists.  Therefore,
the trial court did not err by dismissing this claim for declaratory relief.

Third,
appellants also request a declaration that League City’s conveyance of
properties located around the canal to MB Harbour was legally invalid. 
Specifically, appellants contend League City accepted a donation of the “canal
properties” from Texas Genco, LP, but later allowed Texas Genco, LP’s
successor, NRG Texas, to convey “the property to MB Harbour without any formal
abandonment actions by [League City].”  Appellants further contend that MB
Harbour is now demanding that appellants pay fees to use their boat docks and
piers located on the canal.  Accordingly, appellants request a declaration that
a deed between two private entities is invalid because League City owned, but
never abandoned, the subject property.  This request for declaratory relief
does not involve governmental immunity because the parties to the deed sought
to be declared invalid are non-governmental.  Therefore, the trial court erred
by dismissing this claim for declaratory relief.  

Finally,
appellants request a declaration “that no actions or omissions of [League City]
have affected, altered, reduced, or terminated [appellants’] property and
easement rights to Seminole Drive.”  Determining what property rights, if any, appellants
own relative to Seminole Drive is an integral part of their takings and due
process claims.  Thus, the trial court properly dismissed this redundant
request for declaratory relief.  See Universal Printing Co. v. Premier
Victorian Homes, Inc., 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.]
2001, pet. denied) (“There is no basis for declaratory relief when a party is
seeking in the same action a different, enforceable remedy, and a judicial
declaration would add nothing to what would be implicit or express in a final
judgment for the enforceable remedy.”).  Accordingly, we sustain in part and
overrule in part appellants’ third issue.

VII.   Conclusion

We affirm
those portions of the trial court’s judgment dismissing for want of
jurisdiction the following claims: (1) appellants’ takings claim regarding the
bridge for those appellants who live south of the canal; (2) appellants’
procedural and substantive due process claims seeking monetary relief; (3) appellants’
claim for promissory estoppel; (4) appellants’ purported independent claim for
equitable estoppel; and (5) appellants’ requests for declarations that the
December 2006 deed between League City and MB Harbour is invalid and that “no
actions or omissions of the [League City] have affected, altered, reduced, or
terminated [appellants’] property and easement rights to Seminole Drive.”

We reverse
those portions of the trial court’s judgment dismissing for want of
jurisdiction the following claims: (1) appellants’ takings claim regarding the
bridge for those appellants who live north of the canal and League City’s ninety-nine-year
lease to MB Harbour; (2) appellants’ procedural and substantive due process
claims seeking declaratory relief; and (3) appellants’ requests for
declarations that League City failed to provide substantive and procedural due
process and that NRG Texas’s conveyance of “canal properties” to MB Harbour is
invalid. 

Finally,
we remand for the trial court to allow appellants an opportunity to
amend their takings claim regarding League City’s ninety-nine-year lease to MB
Harbour and for further proceedings consistent with this opinion.

 

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Seymore.

 









[1]
There are references in the record to “MB Harbour LLC” and “MB Harbour Ltd.” 
For purposes of this opinion, all MB Harbour entities are referred to as “MB
Harbour.”





[2]
For purposes of this opinion, we refer to all Texas Genco entities referenced
in the record or briefs as “Texas Genco, LP.”





[3]
At times, appellants have asserted that the 1928 plat afforded them ownership
of all roads in the subdivision.  However, it is clear the plat did not convey
ownership of the roads to residents of Glen Cove.  Furthermore, appellants have
made several statements before the trial court and on appeal that they do not
own the roads or bridge.  Thus, we need consider only whether appellants have a
private easement to use Seminole Drive.





[4]
League City further argues that the probative value of Smith’s testimony is
great because the parties agreed, pursuant to a Rule 11 agreement, that the
deposition responses of four appellants would be binding on all appellants. 
Apparently, Smith was designated as one of the four appellants.  However,
Smith’s testimony quoted above was presented during the evidentiary hearing on
League City’s plea, not in a deposition.  Hence, Smith’s hearing testimony is
not contemplated in the Rule 11 agreement.  





[5]
Moreover, at the hearing on League City’s plea, Smith testified that he
believes “the homeowners in the subdivision have property interest rights along
Seminole Drive, along the bridge, along the water way and other streets in the
neighborhood.”  He also expressed that he has “property rights to access and
cross the bridge.”  Appellant Frank Bennett Harvie, Jr. testified similarly at
the hearing.  Additionally, in an affidavit attached to appellants’ response to
League City’s plea, appellant Jeffrey Hagen averred that he owns an easement
over the bridge.  





[6] In post-submission briefing, League City attached an
instrument that was filed in Galveston County during 1962.  League City argues
that this document reflects a dedication of the property in question for public
use.  The document does contain language reflecting dedication of certain
property for public use.  However, nothing in the document expressly provides
for dedication of Seminole Drive.  In response, the appellants filed an
expert’s opinion indicating that the 1962 dedication did not cover the relevant
part of Seminole Drive.  The evidence filed with this court after submission
was not before the trial court when it ruled on League City’s plea to the
jurisdiction, and thus we do not base any part of our analysis on this
evidence.

 





[7]
In the development agreement between League City and MB Harbour, League City
expressly consented to removal of the bridge in consideration for MB Harbour’s
reimbursing League City the costs for upgrading a nearby lifting station.  





[8]
Stated differently, a city that initially decides to construct a bridge, but
later discovers the bridge is not used by the public, engages in a governmental
function when it decides not to construct the bridge. 





[9]
See Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 156 n.1 (Tex.
2004) (noting that equitable estoppel is not an independent claim).