Paul SMITH, John Allen, Marie Michelle Christie, Anne Leslie Clarkson, Margaret Fuchs, Robert Fuchs, Gwendolyn Griffin, Jeffrey Hagen, Frank Bennett Harvie, Jr., Dorcas Kay Horton, Robert Horton, Jo Renee Landers, Carey Livingston, Patricia Logan, Robert Logan, Marie A. Mixon, William J. Mixon, Jr., Timothy Gamble, Victoria M. Gamble, George A. Najerian, and Harlen L. Sperry, Appellants,

v.

CITY OF LEAGUE CITY, Texas, Appellee.

No. 14–09–00386–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 17, 2011.

Rehearing En Banc Overruled May 19, 2011.

Michael Paul Nassif, Sugar Land, for appellants.

William S. Helfand, Barbara E. Roberts, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellants, Paul Smith, John Allen, Marie Michelle Christie, Anne Leslie Clarkson, Margaret Fuchs, Robert Fuchs, Gwendolyn Griffin, Jeffrey Hagen, Frank Bennett Harvie, Jr., Dorcas Kay Horton, Robert Horton, Jo Renee Landers, Carey Livingston, Patricia Logan, Robert Logan, Marie A. Mixon, William J. Mixon, Jr., Timothy Gamble, Victoria M. Gamble, George A. Najerian, and Harlen L. Sperry, appeal the trial court's order granting the City of League City's ("League City") plea to the jurisdiction and dismissing appellants' claims for lack of jurisdiction. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Appellants are homeowners in Glen Cove, a single-family home subdivision located in League City. A canal runs east-to-west through Glen Cove, separating the subdivision into northern and southern sections. At one time, Seminole Drive

Bridge (the "bridge") spanned the canal, providing access between the northern and southern sections. However, in June 2003, the Texas Department of Transportation ("TxDOT") recommended closure of the bridge due to deterioration. Emails indicate that League City informed TxDOT there was no "public street" exit for residents of the northern section of Glen Cove. Nevertheless, TxDOT considered "the bridge unsafe at any loading." In August 2003, the city council for League City approved "a declaration of emergency closure of the bridge...." League City sent letters to citizens notifying them that (1) the bridge would be closed, (2) TxDOT anticipated bidding on a construction project to replace the bridge would occur before the end of 2003, and (3) the construction project would commence in the first quarter of 2004 and last approximately one year. The bridge was closed shortly thereafter.

In August 2004, League City received a letter from representatives of MB Harbour,[1] a private developer, proposing a development project for the canal area. MB Harbour required permanent removal of the bridge and "access to, or ownership of," the canal as conditions to initiation of the project. League City requested that TxDOT postpone bidding for the bridge-construction project in order to allow League City to consider cancellation of the project. In August 2005, TxDOT informed League City that cancellation of the bridge project would necessitate reimbursement to TxDOT of its expenses incurred in connection with the bridge. League City responded by affirming its decision to proceed with the bridge project. However, after Texas Genco, LP[2] (which claimed it

was the owner of the canal) offered to donate the canal to League City, League City once again requested that TxDOT postpone bidding.

League City passed a resolution approving the purported donation of the canal by Texas Genco, LP to League City and terminating the bridge project, conditioned upon the execution of a development agreement between League City and MB Harbour. In February 2006, League City and MB Harbour entered into a development agreement in which League City consented to removal of the bridge. As a condition of the agreement, MB Harbour agreed to indemnify League City for all costs it would pay TxDOT to terminate the bridge project. The bridge was demolished in October 2006. In December 2006, League City purported to deed the land underlying the bridge to MB Harbour. However, all parties in the case under review agree that this deed is void.

In July 2007, appellants sued League City, complaining of League City's failure to reconstruct the bridge and its conveyances of canal-area property. In their third-amended petition, appellants allege claims for violations of the "just compensation" and "due course of law" provisions of the Texas Constitution and promissory and equitable estoppel. Appellants also seek declaratory relief. League City filed a plea to the jurisdiction in which it contended that the trial court lacked subject-matter jurisdiction over appellants' claims. Following an evidentiary hearing, the trial court granted League City's plea and dismissed all of appellants' claims with prejudice.

---

1. There are references in the record to "MB Harbour LLC" and "MB Harbour Ltd." For purposes of this opinion, all MB Harbour entities are referred to as "MB Harbour."

2. For purposes of this opinion, we refer to all Texas Genco entities referenced in the record or briefs as "Texas Genco, LP."

## II. Plea to the Jurisdiction

We review the trial court's ruling on a plea to the jurisdiction *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex.2004). In a plea to the jurisdiction, a party may challenge either the pleadings or existence of jurisdictional facts. *Id.* at 226–27; *see also* Rebecca Simmons & Suzette Kinder Patton, *Plea to the Jurisdiction: Defining the Undefined*, 40 St. Mary's L.J. 627, 651–52 (2009).

When a defendant challenges the plaintiff's pleadings, the court's determination turns on whether the pleader has alleged facts sufficient to demonstrate subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 226. To make this determination, courts should glean the pleader's intent and construe the pleadings liberally in favor of jurisdiction. *Id.* If the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and plaintiffs should be afforded an opportunity to amend. *Id.* at 226–27. If the pleadings affirmatively negate jurisdiction, a plea may be granted without allowing plaintiffs an opportunity to amend. *Id.* at 227. The opportunity to amend pleadings that are insufficient to establish, but do not affirmatively negate, jurisdiction arises after a court determines the pleadings are insufficient. *White v. Robinson*, 260 S.W.3d 463, 475–76 (Tex.App.-Houston [14th Dist.] 2008, pet. granted) (citing *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839–40 (Tex.2007)).

When a defendant challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts arising from such evidence in the nonmovant's favor. *Id.* at 228. If the relevant evidence is undisputed or a fact question is not raised relative to the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved by the fact finder. *Id.* at 227–28.

## III. Governmental Takings

In their first issue, appellants challenge the trial court's dismissal of their takings and due process claims. Appellants first argue that the trial court erred by dismissing their inverse condemnation claim in which they allege League City violated Article I, Section 17 of the Texas Constitution by taking their property without just compensation. Tex. Const. art. I, § 17.

### A. Appellants' Real–Property Interest

Appellants allege League City's authorizing MB Harbour to destroy the bridge and taking and leasing property on either side of the bridge to MB Harbour constituted takings of private property for which League City owes appellants' adequate compensation pursuant to Article 1, Section 17. League City argued in its plea to the jurisdiction that appellants' takings claim should be dismissed because appellants do not own any property interest relative to Seminole Drive or the bridge.

Governmental immunity does not shield a municipality from an action for compensation under the takings clause. *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 61 (Tex.2009). The takings clause provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without

adequate compensation being made, unless by the consent of such person." Tex. Const. art. 1, § 17(a). Hence, to establish a takings claim, a claimant must show a governmental actor (1) intentionally (2) took or damaged property (3) for a public use. *State v. Holland,* 221 S.W.3d 639, 643 (Tex.2007). Of course, the plaintiff must also have a compensable interest in the property at issue. *Brownlow v. State,* 251 S.W.3d 756, 760 (Tex.App.-Houston [14th Dist.] 2008), *aff'd,* 319 S.W.3d 649 (Tex. 2010). Whether particular facts are sufficient to constitute a taking is a question of law. *Id.*

All parties acknowledge a 1928 plat memorializing the subdivision of Glen Cove according to the "lines, streets, and lots" reflected on the plat. The plat included the following language: "I [the owner of the property] . . . do hereby *dedicate for use of property owners only, all boulevards, streets,* parks, and playgrounds as shown [on the plat]." (emphasis added). Accordingly, appellants argue they are grantees of easements over the streets in Glen Cove, including the portion of Seminole Drive located on the bridge.[3] League City argues that use of the word "dedicate" confirms its contention that the roadways were intended to be public.

■■■■■ League City correctly asserts that the law recognizes *public* dedications, but not private dedications. *See Viscardi v. Pajestka,* 576 S.W.2d 16, 19 (Tex.1978) (citing *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 204–05 (Tex.1963)). However, "the existence of a public dedication is a question of fact." *Id.* at 17, 19. Use of the term "dedicate" is not dispositive of the issue. *See Russell v. City of Bryan,*

919 S.W.2d 698, 703 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Further, language in the plat specifying that the roads were to be used for "property owners only" weighs in favor of a finding that the owner intended to grant a private easement to Glen Cove property owners. *See Drye,* 364 S.W.2d at 219 (op. on reh'g) (concluding property owners had implied easements appurtenant over subdivision roads because plat included the following language: " '[T]he streets and easements shown on said map are for the sole and exclusive use of . . . owners of the lots' ").

■■■■■ League City further argues that certain testimony proves all roads in Glen Cove are public. At the hearing on League City's plea, appellant Paul Smith testified as follows:

[Counsel for League City:] Okay, Mr. Smith. Now, after 1928 however all of the roads in the Glen Cove subdivision become public roads, right?

[Smith:] Sometime after that there [were] public dedications of roadways.

[Counsel for League City:] And the roadways were dedicated to the City of League City, correct?

[Smith:] That's not correct. They were I believe dedicated to the county at the time.

[Counsel for League City:] That's right. Prior to that area being part of the City of League City, correct?

[Smith:] That's my understanding.

[Counsel for League City:] So, they were dedicated to Galveston County, right?

[Smith:] There is a document that I have seen that shows a dedication to Galves-

---

**3.** At times, appellants have asserted that the 1928 plat afforded them ownership of all roads in the subdivision. However, it is clear the plat did not convey ownership of the roads to residents of Glen Cove. Furthermore, appellants have made several statements before the trial court and on appeal that they do not own the roads or bridge. Thus, we need consider only whether appellants have a private easement to use Seminole Drive.

ton County. I questioned the chain of title on that dedication, but, yes, there was a dedication in the early sixties to the county of a number of roadways including Seminole bridge right of way.

[Counsel for League City:] And then the city incorporates the City of League City, took over the jurisdiction of that area including Seminole Drive, correct?

[Smith:] That's what I believe, yes, sir.

[Counsel for League City:] And then after that up until you filed a lawsuit, well, even since you filed a lawsuit the City of League City maintains every street and roadway in Glen Cove subdivision, correct?

[Smith:] That's not correct.

[Counsel for League City:] Which ones don't they maintain[?]

[Smith:] What they don't maintain, they never maintained the right of way of the bridge.

[Counsel for League City:] Listen to my question. The streets, the roads, the City of League City maintains them, don't they, Mr. Smith?

[Smith:] They do now.

[Counsel for League City:] They did in 2003, didn't they?

[Smith:] Yes.

[Counsel for League City:] And they did in 2000, didn't they?

[Smith:] Yes.

[Counsel for League City:] And those streets include a street called Seminole Drive, right?

[Smith:] That's correct.

League City contends the above testimony establishes that the Glen Cove roadways, including Seminole Drive, were dedicated for public use during all times material to the alleged takings.[4] We disagree. Smith's testimony regarding the alleged dedication was conclusory and equivocal. Specifically, Smith, who has been a real estate appraiser and consultant for twenty-five years, stated that he questioned the chain of title relative to the purported dedication. Moreover, there is no document in evidence supporting the contention that Glen Cove streets were dedicated for public use.[5] On this record, we conclude League City did not fulfill its burden to establish conclusively that Seminole Drive was public at the time of the alleged takings.[6]

**4.** League City further argues that the probative value of Smith's testimony is great because the parties agreed, pursuant to a Rule 11 agreement, that the deposition responses of four appellants would be binding on all appellants. Apparently, Smith was designated as one of the four appellants. However, Smith's testimony quoted above was presented during the evidentiary hearing on League City's plea, not in a deposition. Hence, Smith's hearing testimony is not contemplated in the Rule 11 agreement.

**5.** Moreover, at the hearing on League City's plea, Smith testified that he believes "the homeowners in the subdivision have property interest rights along Seminole Drive, along the bridge, along the water way and other streets in the neighborhood." He also expressed that he has "property rights to access and cross the bridge." Appellant Frank Ben-

nett Harvie, Jr. testified similarly at the hearing. Additionally, in an affidavit attached to appellants' response to League City's plea, appellant Jeffrey Hagen averred that he owns an easement over the bridge.

**6.** In post-submission briefing, League City attached an instrument that was filed in Galveston County during 1962. League City argues that this document reflects a dedication of the property in question for public use. The document does contain language reflecting dedication of certain property for public use. However, nothing in the document expressly provides for dedication of Seminole Drive. In response, the appellants filed an expert's opinion indicating that the 1962 dedication did not cover the relevant part of Seminole Drive. The evidence filed with this court after submission was not before the trial court

Accordingly, a fact issue remains regarding whether appellants owned a private easement over Seminole Drive and the bridge. Additionally, League City has not challenged appellants' allegations that League City took and leased property on either side of the bridge to MB Harbour. We hold the trial court erred to the extent it dismissed appellants' takings claim on the basis that appellants had no property interest.

## B. Standing

League City also argued in its plea that appellants lack standing because their alleged injuries are not specific, but apply to the general public.

To prove standing, a party must demonstrate that he "possesses an interest in a conflict distinct from that of the general public, such that that defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex.2001). Standing is a question of law we determine *de novo*. *Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 670 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). A landowner suffers no compensable injury where the government has not physically appropriated, denied access to, or otherwise directly restricted the use of the landowner's property. *Id.* at 672.

Appellants allege League City's unconstitutional takings have caused them the following harm:

1) denied many of the residents, including [appellants], from the necessary and emergency ingress and egress to and from their homes; 2) caused confusion and delay to emergency services and responders such as EMS, fire and po-

lice; 3) caused loss of use of the neighborhood park by some of the residents by denying any reasonable access; 4) denied long-standing access among neighborhood friends; 5) denied the protection of an evacuation route during flooding, storms and/or hurricanes; 6) left a private road as the only way for homeowners (including some [appellants]) on the north side of the Glen Cove canal to enter or leave their subdivision, and 7) caused significant economic damages to Glen Cove property owners, including [appellants], in lost property values and in loss of use and enjoyment of certain aspects of their property.

All of these complaints stem from the same fact: persons on the northern section of the Glen Cove can no longer access the southern section without traveling a less-direct route via Marina Way, a private road. League City argues these are non-compensable injuries because appellants' only allegation is that ingress to and egress from their homes has become more circuitous. Under these unique facts, we disagree.

It is well settled that diminished value resulting from impaired access is compensable only when access is materially and substantially impaired. *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex.2008) (per curiam) (citing *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex.1969)). A landowner with an easement of access is entitled to compensation through an inverse condemnation claim when the access is "'materially and substantially impaired.'" *State v. Bhalesha*, 273 S.W.3d 694, 698 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (quoting *State v. Heal*, 917 S.W.2d 6, 10 (Tex.1996)).

when it ruled on League City's plea to the jurisdiction, and thus we do not base any part of our analysis on this evidence.

Whether access has been materially and substantially impaired is a threshold question of law reviewed *de novo*. *City of San Antonio v. TPLP Office Park Props., L.P.*, 218 S.W.3d 60, 66 (Tex.2007). Generally, "damages that result to property by virtue of traffic being required to travel a more circuitous route to reach the property in question are not compensable and are not the result of a material and substantial impairment of access." *Bhalesha*, 273 S.W.3d at 698–99; *see also State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 174 (Tex. 2009) ("[D]iminished access to a landowner's remaining property is not compensable so long as reasonable access to the property remains."). Further, access to a plaintiff's property will usually not be materially and substantially impaired when access to another public roadway remains. *See Bhalesha*, 273 S.W.3d at 702; *see also Archenhold Auto. Supply Co. v. City of Waco*, 396 S.W.2d 111, 114 (Tex.1965) ("[O]ne of two public streets may be closed without compensation to an abutting landowner if the remaining street furnishes suitable means of access."). However, we have found no authority addressing government compensation when a taking has relegated the plaintiff to only a *private* means of access, such as alleged here.

We believe a taking that leaves only a private roadway is significantly different from a taking that leaves a public roadway because, in the former, there is uncertainty concerning the complainant's ability and right to access his property via the private roadway, and this uncertainty could diminish the value of a complainant's property or cloud the title. Although evidence indicates appellants have been allowed to utilize Marina Way for ingress and egress since the bridge was closed, there is no indication in the record regarding the duration that Marina Way will be accessible. Also unanswered by the pleadings or evidence is whether the government has secured access on Marina Way for appellants. Under the facts alleged, appellants are at the mercy of the private owner of Marina Way. Accordingly, we hold appellants who live on the north side of the canal have sufficiently alleged *that* access to their properties has been materially and substantially impaired. However, those appellants living on the south side of the canal have continued ingress and egress via a public road. We conclude appellants who live in the southern section of Glen Cove have not alleged facts sufficient to support their claim that removal of the bridge resulted in a compensable injury.

Appellants request that we remand for opportunity to replead if we determine their pleadings are not sufficient to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction. *See Miranda*, 133 S.W.3d at 226–27. Although the general rule reflects a preference for allowing amendment, a plaintiff may forfeit this opportunity through inaction. *Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 577 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). League City challenged appellants' standing to assert a claim for inverse condemnation regarding League City's alleged taking of the Seminole Drive Bridge. By failing to request permission to amend this claim after the trial court found League City's standing challenge meritorious, appellants forfeited the opportunity to amend. *Id.* Therefore, we deny appellants' request for an opportunity to amend this claim relative to those appellants who live in the southern section of Glen Cove.

Nevertheless, as part of their takings claim, appellants also allege that League City "leased the property on either side of the Bridge, including property

and/or easements and rights of way owned by [appellants,] to MB Harbour for 99 years." This allegation applies to all appellants. League City did not specifically challenge this part of appellants' takings claim in its plea. We cannot determine from appellants' pleadings whether League City's ninety-nine-year lease to MB Harbour resulted in a compensable injury. However, the pleadings do not affirmatively demonstrate incurable defects in the trial court's jurisdiction over such claim. Because this particular aspect of appellants' takings claim was not challenged by League City, but is determined to be insufficient by this court *sua sponte*, appellants have not had a chance to amend such claim to address the insufficiency we identify. Thus, appellants should have an opportunity to amend their pleadings relative to this claim. *See Miranda*, 133 S.W.3d at 226–27; *see also Gatesco, Inc. Ltd. v. City of Rosenberg*, 312 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2010, no pet.) ("Because appellants have had no opportunity to respond to Rosenberg's new argument concerning governmental immunity and appellants' equitable claims, we find that appellants should be given an opportunity to amend their pleadings to reflect whether the Overcharges were paid as a result of fraud, mutual mistake of fact, or duress.").

In sum, we hold that (1) the trial court erred by dismissing appellants' takings claim regarding the bridge for those appellants who live north of the canal, (2) the trial court did not err by dismissing appellants' takings claim regarding the bridge for those appellants who live south of the canal, and we deny appellants' request for an opportunity to amend this claim on remand, and (3) the trial court erred by dismissing appellants' takings claim regarding League City's ninety-nine-year lease to MB Harbour, and we grant appellants' request to amend this claim on re-

mand. Accordingly, we sustain in part and overrule in part that portion of appellants' first issue pertaining to their takings claim.

## IV. DUE COURSE OF LAW

In the second part of their first issue, appellants argue that the trial court erred by dismissing their claim that League City deprived them of property without due course of law, in violation of Article I, Section 19 of the Texas Constitution. *See* Tex. Const. art. I, § 19. As an initial matter, we note that appellants did not assert a due process claim in their first-amended petition, but instead asserted a claim for violation of the Texas Open Meetings Act ("TOMA"). League City's plea to the jurisdiction was filed in response to the first-amended petition, and League City staged an evidentiary attack against the TOMA claim in its plea. In their third-amended petition, appellants dropped their TOMA claim and alleged that League City violated their due process rights. Hence, in its plea, League City never specifically challenged appellants' due process claims. With this background, we proceed with the following analysis.

Appellants argue they "received neither procedural nor substantive due process from [League City] ... [because League City] took [appellants'] property and easement rights without notice, hearing or compensation, gave [their property] to a private developer for a private use, and then tried to hide this fact from [appellants by] ... lying to them about what had already happened." Appellants also allege that League City failed to provide proper notice before allegedly deeding the bridge or leasing property on each side of the bridge to MB Harbour.

■ We begin with appellants' procedural due process claim. If an individual is deprived of a property right, the government must afford an appropriate and meaningful opportunity to be heard consistent with the requirements of procedural due process. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex.2001); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex.1998). Accordingly, a plaintiff alleging a procedural due process takings claim must establish that he was deprived of notice and an opportunity to be heard with respect to a decision affecting his property rights. *Mayhew*, 964 S.W.2d at 939.

As mentioned above, League City presented evidence that it provided *notice* pursuant to TOMA before it made decisions regarding the bridge and Seminole Drive. However, League City did not present argument or evidence that it afforded appellants an *opportunity to be heard* with respect to such decisions. Thus, we hold League City did not conclusively establish that it provided procedural due process to appellants.

■ This conclusion does not end our review of appellants' procedural due process claim because we are obliged to ascertain the existence of subject-matter jurisdiction. *Texas Dept. of Transp. v. Olivares*, 316 S.W.3d 89, 104 (Tex.App.-Houston [14th Dist.] 2010, no pet.). We note that appellants seek monetary damages against a governmental entity for their due process claim. The due process provisions of the Texas Constitution do not imply a cause of action for damages. *See Old S. Amusements, Inc. v. City of San Antonio*, No. 04–09–00466–CV, 2010 WL 2772444, at *3 (Tex.App.-San Antonio July 14, 2010, no pet.) (mem.op.); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143,

149 (Tex.1995). A due process claim in which the plaintiff seeks monetary damages does not invoke the trial court's jurisdiction. *See Univ. of Tex. Sys. v. Courtney*, 946 S.W.2d 464, 469 (Tex.App.-Fort Worth 1997, writ denied). Thus, the trial court did not err to the extent it dismissed appellants' due process claim for monetary damages.

■ However, appellants also request a declaration that League City's alleged conveyance or gifting of the bridge, authorization for MB Harbour to demolish the bridge, and execution of a lease concerning property surrounding the bridge were invalid.[7] To the extent appellants seek a declaration that these actions were invalid because League City failed to afford procedural due process, appellants have sufficiently pleaded a waiver of governmental immunity and the trial court erred by dismissing this claim. *See Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W.3d 338, 349–50 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (concluding plaintiff's requests for declaratory relief based on alleged constitutional violations sufficiently pleaded a waiver of governmental immunity).

■ We next consider appellants' substantive due process claim. Appellants allege (and evidence does not conclusively negate) that they were denied substantive due process because League City took their property for a private purpose. " 'One person's property may not be taken for the benefit of another private person without a justifying public purpose, even though compensation be paid.' " *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140–41 (Tex.1977) (quoting *Thompson v. Consol. Gas Co.*, 300 U.S. 55, 80, 57 S.Ct. 364, 81

---

7. In the development agreement between League City and MB Harbour, League City expressly consented to removal of the bridge in consideration for MB Harbour's reimbursing League City the costs for upgrading a nearby lifting station.

L.Ed. 510 (1936)); *see also Whitfield v. Klein Indep. Sch. Dist.,* 463 S.W.2d 232, 235 (Tex.Civ.App.-Houston [14th Dist.] 1971, no writ.). Accordingly, appellants have sufficiently alleged that League City violated their substantive due process rights. As previously explained, appellants seek monetary damages for this claim, which does not invoke the trial court's jurisdiction. However, they also seek declaratory relief. Accordingly, the trial court properly dismissed appellants' substantive due process claim for monetary damages, but erred to the extent it dismissed appellants' request for declaratory relief based on League City's alleged substantive due process violations.

We recognize appellants' inverse condemnation claim would fail if League City took appellants' property for a private purpose because a necessary element of such claim is that the government has taken private property for a *public use. See Holland,* 221 S.W.3d at 643; *Osburn v. Denton County,* 124 S.W.3d 289, 293 (Tex. App.-Fort Worth, 2003, pet. denied) (explaining that governmental taking of private property for private use may be declared void, but does not waive immunity from suit for monetary damages). However, in their petition, appellants allege, "Whether [League City] had the Bridge demolished and leased portions of Seminole Drive for a purely private use, a public use, or combination of the two," appellants' rights under Article I, Sections 17 and 19 of the Texas Constitution were violated. For jurisdictional purposes, we liberally construe this language as asserting appellants' inverse condemnation and due course of law claims alternatively. Accordingly, we sustain in part and overrule in part that portion of appellants' first issue relating to their due process claims.

## V. PROMISSORY AND EQUITABLE ESTOPPEL

We next address appellants' second issue, challenging the trial court's dismissal of their promissory estoppel claim and purported equitable estoppel claim. In their promissory estoppel claim, appellants contend "[League City] repeatedly promised the residents of Glen Cove, including [appellants,] that the Bridge would be rebuilt. [Appellants] relied on [League City's] promise to rebuild the Bridge to their detriment." Through this claim, appellants seek to enforce League City's alleged promise to rebuild the bridge.

A promissory estoppel claim is available when a promisee has acted to its detriment in reasonable reliance on an otherwise unenforceable promise. *See El Paso Healthcare Sys. Ltd. v. Piping Rock Corp.,* 939 S.W.2d 695, 698 (Tex.App.-El Paso 1997, writ denied). Generally, a city may be estopped only if it would not interfere with the city's ability to perform any act that the legislature has deemed, or that the court determines to be, a municipal governmental function. *See City of White Settlement v. Super Wash, Inc.,* 198 S.W.3d 770, 777 (Tex.2006). The Texas Tort Claims Act includes a non-exclusive list of municipal activities the legislature designated as "governmental functions ... exercised by the municipality in the interest of the general public," including "street construction and design" and "bridge construction and maintenance and street maintenance." Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a)(2)-(3) (West 2011). Governmental functions encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute. *See City of Houston v. Petroleum Traders Corp.,* 261 S.W.3d 350, 356 (Tex.App.-Houston [14th Dist.] 2008, no pet.). League City argues that its decisions concerning the bridge were closely related to the governmental function of "bridge construction and maintenance."

■ The present situation is unique because appellants do not allege, and it is unclear from the record, whether the bridge was private or public. However, we agree that League City's decision not to rebuild the bridge—regardless of whether it was private or public—is encompassed under the governmental function of "bridge construction and maintenance."[8] Additionally, League City's actual motive for deciding not to rebuild the bridge—whether for traffic regulation or to placate a private developer—is inconsequential. *See City of San Antonio v. Butler*, 131 S.W.3d 170, 177–78 (Tex.App.-San Antonio 2004, pet. denied) ("[A]ll activities associated with the operation of one of the government functions listed in section 101.0215(a) are governmental and cannot be considered proprietary, regardless of the city's motive for engaging in the activity."). Ordering League City to comply with its alleged promise to rebuild the bridge would interfere with its ability to perform a governmental function. Accordingly, we conclude that the trial court did not err by dismissing appellants' promissory estoppel claim for lack of jurisdiction.

Appellants also rely on equitable estoppel, alleging that they "detrimentally relied on [League City's] false promises to a number of [appellants] that there were no plans to demolish the Bridge." Specifically, appellants allege the mayor of League City and another city official deliberately misinformed appellants, days before the bridge was destroyed, that League City had not abandoned the bridge project and there was no impending agreement with a

private developer to demolish the bridge. On appeal, appellants argue League City should be equitably estopped from asserting that it provided procedural due process because appellants did not timely pursue an injunction in reliance on misrepresentations by city officials. We express no opinion on the applicability of such a theory in this situation, but note that nothing in the trial court's order granting League City's plea prevents appellants from pursuing this theory on remand.

■ However, it appears appellants also allege an independent cause of action for equitable estoppel. The merits of this purported claim are not at issue in determining the trial court's subject-matter jurisdiction, and we presume for the sake of argument that this claim is valid.[9] When a political subdivision of the State is immune from suit under the doctrine of governmental immunity, courts lack subject-matter jurisdiction over the suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Appellants have not identified and we are unaware of any statute in which League City's governmental immunity has been waived relative to the purported equitable estoppel claim. Additionally, the limited waiver of governmental immunity available when a governmental entity prosecutes a claim for money damages is not available as a matter of law because League City is not pursuing recovery of a sum of money. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 376–77 (Tex.2006). Accordingly, we hold that the trial did not err by dismissing this claim. *See* Tex. Gov't Code Ann. § 311.034 (West Supp.2009) (providing that a statute shall not be construed as a waiver of sovereign

---

8. Stated differently, a city that initially decides to construct a bridge, but later discovers the bridge is not used by the public, engages in a governmental function when it decides not to construct the bridge.

9. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 n. 1 (Tex.2004) (noting that equitable estoppel is not an independent claim).

immunity unless the waiver is effected by clear and unambiguous language); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332–33 (Tex.2006). Appellants' second issue is overruled.

## VI. DECLARATORY JUDGMENT

Finally, in their third issue, appellants contend the trial court erred by dismissing their requests for declaratory relief. First, appellants request a declaration that League City's "actions in giving away the Bridge which it did not own to private developer MB Harbour, and allowing MB Harbour to demolish the Bridge without following any required procedures were illegal, and did not advance any legitimate governmental interest." As explained in the due process section above, to the extent appellants seek a declaration that conveyance of the bridge and surrounding property violated their constitutional rights to procedural and substantive due process, they have sufficiently pleaded a waiver of governmental immunity, and the trial court erred by dismissing their claim. *See Gatesco*, 333 S.W.3d at 349–50.

 Second, appellants request a declaration that a December 2006 deed in which League City purported to convey the bridge structure and surrounding land to MB Harbour is invalid. However, in the course of this litigation, League City unambiguously conceded that this particular deed is void. A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 781 (Tex.App.-Houston [14th Dist.] 2008, no pet.). For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Id.* Be-

cause League City has judicially admitted that the deed is void, no justiciable controversy exists. Therefore, the trial court did not err by dismissing this claim for declaratory relief.

 Third, appellants also request a declaration that League City's conveyance of properties located around the canal to MB Harbour was legally invalid. Specifically, appellants contend League City accepted a donation of the "canal properties" from Texas Genco, LP, but later allowed Texas Genco, LP's successor, NRG Texas, to convey "the property to MB Harbour without any formal abandonment actions by [League City]." Appellants further contend that MB Harbour is now demanding that appellants pay fees to use their boat docks and piers located on the canal. Accordingly, appellants request a declaration that a deed between two private entities is invalid because League City owned, but never abandoned, the subject property. This request for declaratory relief does not involve governmental immunity because the parties to the deed sought to be declared invalid are non-governmental. Therefore, the trial court erred by dismissing this claim for declaratory relief.

 Finally, appellants request a declaration "that no actions or omissions of [League City] have affected, altered, reduced, or terminated [appellants'] property and easement rights to Seminole Drive." Determining what property rights, if any, appellants own relative to Seminole Drive is an integral part of their takings and due process claims. Thus, the trial court properly dismissed this redundant request for declaratory relief. *See Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) ("There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration

would add nothing to what would be implicit or express in a final judgment for the enforceable remedy."). Accordingly, we sustain in part and overrule in part appellants' third issue.

## VII. CONCLUSION

We **affirm** those portions of the trial court's judgment dismissing for want of jurisdiction the following claims: (1) appellants' takings claim regarding the bridge for those appellants who live south of the canal; (2) appellants' procedural and substantive due process claims seeking monetary relief; (3) appellants' claim for promissory estoppel; (4) appellants' purported independent claim for equitable estoppel; and (5) appellants' requests for declarations that the December 2006 deed between League City and MB Harbour is invalid and that "no actions or omissions of the [League City] have affected, altered, reduced, or terminated [appellants'] property and easement rights to Seminole Drive."

We **reverse** those portions of the trial court's judgment dismissing for want of jurisdiction the following claims: (1) appellants' takings claim regarding the bridge for those appellants who live north of the canal and League City's ninety-nine-year lease to MB Harbour; (2) appellants' procedural and substantive due process claims seeking declaratory relief; and (3) appellants' requests for declarations that League City failed to provide substantive and procedural due process and that NRG Texas's conveyance of "canal properties" to MB Harbour is invalid.

Finally, we **remand** for the trial court to allow appellants an opportunity to amend their takings claim regarding League City's ninety-nine-year lease to MB Har-

bour and for further proceedings consistent with this opinion.