**Opinion issued April 3, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01091-CV

———————————

### THE CITY OF HOUSTON, Appellant

### V.

### DOWNSTREAM ENVIRONMENTAL, L.L.C., Appellee

---

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2011-29293

---

### DISSENTING OPINION

Appellee, Downstream Environmental, L.L.C. ("Downstream"), claims that

it is entitled to damages and equitable relief for harm it alleges it suffered when

appellant, the City of Houston ("the City"), temporarily closed the discharge line

from Downstream's liquid waste disposal facility into the City's sewer system without notice, kept the discharge line shut for twenty-seven days, and then discriminatively overcharged it, denied it an administrative hearing on its over-charge and abuse of process claims, and attempted to place a lien on its property. I agree with the majority that Downstream's claims for damages are barred by governmental immunity. I disagree with the majority's determination that Downstream's claims for equitable and injunctive relief under the Texas Constitution's due process and equal protection clauses, Article I, sections 3 and 19,[1] are not likewise barred, that the Texas courts have subject matter jurisdiction over them, and that Downstream is entitled to replead its constitutional claims.

I would reverse the trial court's order denying the City's plea to the jurisdiction, and I would render judgment dismissing Downstream's suit against the City for lack of subject matter jurisdiction.

**Background**

In its constitutional claims, Downstream seeks to void or enjoin allegedly unconstitutional governmental action by the City. Specifically, it alleges that the

---

[1] Article I, section 19 of the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Article 1, section 3 of the Texas Constitution provides that "[a]ll free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." TEX. CONST. art. I, § 3.

City has violated its constitutional due process rights by closing its industrial wastewater service without notice, discriminatively increasing its rates, denying it timely administrative hearings on its wastewater bill, and endeavoring to file a lien and foreclosure on its business. In its equal protection claim, it alleges that it has been singled out for disparate treatment by the City without a rational basis. It complains of the City's sampling, laboratory, and testing methods relied upon to increase Downstream's wastewater rates, putting Downstream out of business. Downstream contends that the City acted without a rational basis and treated it differently from all other industrial wastewater customers, denying it equal protection. It also claims that the City violated its due process rights by denying it administrative hearings that are a prerequisite to filing a claim in state district court. I would hold that Downstream's due process and equal protection claims are barred by the City's governmental immunity, and, therefore, this Court and the district court lack subject matter jurisdiction over them. I would further hold that these claims fail to state a claim upon which relief can be granted and that they cannot be repleaded to state a viable claim.

**Standard of Review**

A plea to the jurisdiction based on governmental immunity questions a trial court's subject matter jurisdiction. *State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.

2004).  A court may grant a plea to the jurisdiction without affording the plaintiff an opportunity to amend only if "the pleadings affirmatively negate the existence of jurisdiction."  *Miranda*, 133 S.W.3d at 226–27.  "Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages."  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).  While sovereign immunity protects the State, its agencies, and their officers, governmental immunity protects subdivisions of the State, like municipalities and school districts.  *Id.* at 655 n.2 (citing *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).  Both sovereign and governmental immunity "afford the same degree of protection and both levels of government are subject to the Tort Claims Act."  *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (Vernon 2011 & Supp. 2013); *Sykes*, 136 S.W.3d at 638.

Governmental immunity includes both immunity from suit, which deprives a court of subject matter jurisdiction, and immunity from liability, which is an affirmative defense.  *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 588–89 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Miranda*, 133 S.W.2d at 224).  "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit."  *Id.* at 589 (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 853 (Tex. 2002)).  "If the Legislature has not

4

expressly waived immunity from suit, the State retains immunity even if its liability is not disputed." *Id.* "Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *Id.*

**Analysis**

### A. *Due Process*

Downstream contends that the City's "illegal sampling and testing methods, and illegal rate hikes, are unconstitutional and illegal, and constitutes [sic] an arbitrary, capricious, and irrational action by the City," resulting in overcharges of "approximately $286,296.40," and that it was denied "an administrative hearing to address overcharging" by the City, in further violation of its constitutional due process rights. I would hold that these "due process" claims are moot to the extent they seek to enjoin the City's past actions and that, to the extent they do not, they are disguised claims for monetary damages. Downstream does not otherwise assert a due process claim upon which relief can be granted, and I would conclude that the facts in the record upon which Downstream predicates its due process claims affirmatively negate the existence of any such claim. I would hold that the Texas courts lack subject matter jurisdiction over Downstream's due process claims.

First, Texas courts lack jurisdiction to enjoin past actions. "A case becomes moot if at any stage there ceases to be an actual controversy between the parties."

5

*Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). An issue may be moot if it becomes impossible for the court to grant effectual relief. *In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding); *see Rawlings v. Gonzalez*, 407 S.W.3d 420, 428 (Tex. App.—Dallas 2013, no pet.) (holding that trial court could not enjoin actions that had already occurred); *see also Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (holding that for plaintiff to have standing, controversy must exist between parties at every stage of legal proceedings, including appeal; if case becomes moot parties lose standing to maintain their claims). Thus, to the extent Downstream seeks to enjoin the City's past actions that Downstream claims wrongfully caused it to incur debt to the City, its due process claims are moot, and the Texas courts lack jurisdiction over them.

Second, to the extent Downstream seeks to enjoin the City's attempt to collect Downstream's debt, I would hold that the claim is a disguised claim to recover damages in the form of relief from an allegedly improperly-imposed debt and is therefore barred by governmental immunity. Downstream has admitted, and the law agrees, that "[t]he due process provisions of the Texas Constitution do not imply a cause of action for damages." *See Smith v. City of League City*, 338 S.W.3d 114, 127 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Hidalgo Cnty. v. Dyer*, 358 S.W.3d 698, 708 (Tex. App.—Corpus Christi 2011, no

6

pet.) (holding that Article I, Section 19 of Texas Constitution does not authorize suit for money damages against political subdivision of state). Furthermore, "[a] due process claim in which the plaintiff seeks monetary damages does not invoke the trial court's jurisdiction." *Smith*, 338 S.W.3d at 127.

Third, to the extent Downstream seeks to enjoin the City's collection efforts on the ground that it was denied an administrative hearing, and thus deprived of due process of law, the record refutes its contention. There is no indication in the record that Downstream paid the City the amount of money whose collection it now seeks to enjoin; nor does the record confirm that Downstream was denied an administrative hearing on its complaints that it was overcharged and that the City had wrongfully sought a lien on its property in denial of its due process rights. Rather, the record reflects the opposite. Specifically, on September 26, 2012, at Downstream's request, the City held the requested administrative hearing on the City's intent to place a lien on Downstream's plant for a portion of Downstream's past-due wastewater bill. The hearing resulted in a decision finding that Downstream owed the City amounts in excess of $200,000 and allowing the City to place the lien on Downstream's property in the requested amount of $100,000.[2]

---

[2] Downstream could have filed a declaratory judgment action seeking to void "the City's administrative actions regarding rate increases and frivolous violations," but it did not. However, it could not have recovered damages even if it had filed such an action. "The Declaratory Judgments Act ('DJA') provides an express waiver of governmental immunity for declaratory relief, but not for money damages."

7

Finally, to the extent Downstream is attempting to raise an inverse condemnation claim alleging that the City has unconstitutionally taken or burdened its property—also artfully cast as a due process claim—I would hold that the district court lacked jurisdiction to consider this claim as a matter of law. "A county court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy." TEX. GOV'T CODE ANN. § 25.1032(c) (Vernon Supp. 2013).

For the foregoing reasons, I would dismiss Downstream's due process claims as affirmatively negated by the record.

## B.  *Equal Protection*

Downstream also contends that the City has violated its constitutional right to equal protection of the law by "willfully engag[ing] in the intentional harassment of Downstream's business by termination of wastewater services, issuing frivolous violations, illegal sampling, non-approved testing of sample, and overcharging in in the amount of $286,296.40." It alleges that City employees engaged in a "disparagement campaign" against it, that it "has been singled out for maltreatment, bullying and harassment," and that it has been "repeatedly denied Administrative hearings to address overcharging." Downstream contends that

---

*Gatesco, Inc. v. City of Rosenberg*, 312 S.W.3d 140, 144 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2008) (providing for "declaration of rights, status, or other legal relations" when construction or validity of municipal ordinance is challenged)).

8

"[n]o other industrial customer in the City has been treated like Downstream" and that the closure of Downstream's wastewater service on May 26, 2010, without prior notice "violates the equal protection clause, Article I, Section 3 of the Texas Constitution."  It therefore seeks to enjoin the City's "administrative actions regarding rate increases and frivolous violations."

"[T]he equal protection clause of the state constitution directs governmental actors to treat all similarly situated persons alike." *City of Houston v. Johnson*, 353 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40, 105 S. Ct. 3249, 3254 (1985) (discussing federal constitution's equal protection clause).  "[T]o assert an equal protection claim, the deprived party must establish two elements:  (1) that he was treated differently than other similarly-situated parties; and (2) he was treated differently without a reasonable basis." *Sanders v. Palunsky*, 36 S.W.3d 222, 225 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *City of Lubbock v. Corbin*, 942 S.W.2d 14, 22 (Tex. App.—Amarillo 1996, writ denied).  In an equal protection case, "[w]here neither a suspect classification nor a fundamental right is involved, the challenged law survives constitutional scrutiny if it is rationally related to a legitimate governmental purpose." *Johnson*, 353 S.W.3d at 503–04 (citing *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–58, 108 S. Ct. 2481, 2487 (1988)).

9

Here, the record shows that Downstream's Industrial Waste Permit authorizes it "to discharge into the City's collection system raw liquid waste in accordance with the effluent limitation, monitoring requirements and other conditions" set forth in the Permit. The Permit is circumscribed by the City's Code of Ordinances, Chapter 47 ("Water and Sewers"), Article V ("Disposal of Industrial Wastes Through City Sewer System"), and by the federal Clean Water Act.

Downstream admits it accepted waste that was outside the limits of its Permit. Specifically, in his affidavit to the Houston Police Department, Downstream's president Dan Noyes judicially admitted that, on the afternoon of May 25, 2010, Downstream received from a G.I. Environmental truck "approximately 1000-2000 gallons" of waste that was at first normal in appearance, "but then turned nasty & malodorous with an industrial type odor" and had an appearance "darker than usual." Downstream also admitted in its original petition that, on May 25 and 26, 2010, G.I. Environmental trucks delivered gallons of "non-conforming waste" and that "[t]he non-conforming material was very dark and smelled like onions. It was highly odorous. When the non-conforming material was diluted, it turned from black to green."

When G.I. Environmental filed suit against Downstream over the May 25 and May 26 incidents, Downstream counterclaimed, alleging that the non-

10

conforming waste it received was a result of G.I. Environmental's negligent "failure to wash out their truck after hauling hazardous industrial" waste and that G.I. Environmental's "[n]egligence caused pollution damages to Downstream's plant operations, and the shut down by the City." Downstream stated that "[t]he plant was closed by the City for 27 days of investigation due to problems at the City's plant, and the mixed loads brought by G.I. Environmental to Downstream." In other words, Downstream admitted to releasing large amounts of hazardous industrial waste into the City's waste-water treatment system that caused harm at the City's water treatment facility and that also caused its own plant to be shut down for twenty-seven days for investigation into the cause of the release of toxic pollutants into the City's waste-water treatment system, and it blamed G.I. Environmental for causing the damage to the City's water treatment facility and the shutdown of its own plant. By contrast, in this litigation, Downstream inconsistently blames the *City* for causing its losses by shutting down its facility and calls the City's actions, including the losses due to the shutdown and the rate hike following the contamination, a violation of Downstream's right to equal protection of the law.

Downstream does not claim that it belongs to a suspect class or that the constitutional rights the City allegedly violated were fundamental. Therefore, it can establish that it was denied equal protection only by showing that the City had

11

no rational basis for its ordinances circumscribing Downstream's permit to discharge treated wastewater into the City's sewer system. *See Kadrmas*, 487 U.S. at 457–58, 108 S. Ct. at 2487; *Johnson*, 353 S.W.3d at 503. However, it is clear that a municipality, as a governmental entity of the state, has not only the constitutional right but the constitutional responsibility to regulate the discharge of toxic pollutants into the municipality's water supply to protect the public health and safety of its residents. *See* U.S. CONST. amend. X (setting out "police powers" of state). Downstream does not allege that the City has no such power, nor could it.

Moreover, Downstream has alleged no facts that support its claim that the City violated its equal protection rights by "willfully engag[ing] in the intentional harassment of Downstream's business by termination of wastewater services, issuing frivolous violations, illegal sampling, non-approved testing of samples, and overcharging in in the amount of $286,296.40"—and the acknowledged emergency circumstances of the City's actions refute any such allegation. Downstream has recited no facts to support its conclusory allegation that City employees engaged in a "disparagement campaign" against it or that it "has been singled out for maltreatment, bullying and harassment." Nor has Downstream set forth any basis for its contentions that "[n]o other industrial customer in the City has been treated like Downstream" and that the closure of Downstream's wastewater service on

May 26, 2010—the second consecutive day on which Downstream discharged hazardous industrial waste into the City's sewer system that Downstream admits caused pollution damages to its plant operations and the shut down by the City—"violates the equal protection clause, Article I, Section 3 of the Texas Constitution."

Contrary to Downstream's equal protection allegations, no rational governmental entity could deem Downstream's violations of the City's ordinances designed to protect the public health and safety to be "frivolous violations" when those violations permitted large amounts of hazardous industrial waste to be discharged by Downstream into the City's waste-water treatment system. The record demonstrates that the City shut down Downstream's plant until the source and nature of the contamination could be identified and the contamination stopped, it passed on to Downstream the costs of its investigation, and it passed on to Downstream the costs of its remedial actions to protect the municipal water supply. No rational jury could find that these actions constitute "frivolous" or irrational administrative actions. Finally, the record does not support Downstream's claim that it was discriminated against by being denied an administrative hearing to protest the City's actions and rate hike or by the City's placement of a lien on its property to secure its unpaid debt to the City.

A court may grant a plea to the jurisdiction without affording the plaintiff an opportunity to amend when "the pleadings affirmatively negate the existence of jurisdiction." *Miranda*, 133 S.W.3d at 226–27. I would hold that that is plainly the case here.

## Conclusion

I would hold that Downstream has failed to state a constitutional due process or equal protection claim and that its claims cannot be restated to support a constitutional claim over which the Texas state courts have jurisdiction. Therefore, I would reverse the judgment of the trial court denying the City's plea to the jurisdiction, and I would render judgment dismissing Downstream's suit for lack of subject matter jurisdiction.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Keyes, J., dissenting.

14