

# IN THE
# TENTH COURT OF APPEALS

## No. 10-23-00315-CV

**CITY OF DALLAS,**

                                                                **Appellant**

 **v.**

**KATRINA AHRENS; S.A. AND M.A., CHILDREN,**

                                                                **Appellees**

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. DC-C201700365

## MEMORANDUM  OPINION

The City of Dallas appeals from the trial court's denial of its plea to the jurisdiction. Appellees Katrina Ahrens and her children, S.A. and M.A., sued the City and others seeking damages in connection with the City's handling of donations sent to the City after Ahrens' husband, a Senior Corporal with the Dallas Police Department, was killed in the line of duty. The City asserts in four issues that it is entitled to dismissal based on governmental immunity. We affirm.

## Background

On July 7, 2016, five police officers were killed by a sniper during a demonstration in downtown Dallas, including Ahrens' husband. The City received an overwhelming volume of mail in response to the shooting. Some of that mail included checks and cash for the benefit of the families of the officers who were killed.

In October 2016, the City contracted with a charitable organization, the Assist the Officer Foundation (ATO), to process that mail and disperse the donated funds to the appropriate recipients. The terms of their agreement are embodied in a document entitled "Donations Management Agreement" (DMA).

The DMA was signed by the Assistant City Manager of Dallas, a representative of ATO, and, under the phrase "Recommended By," the Interim Chief of Police. Pursuant to the DMA, the City agreed to deliver all donations to ATO which would open the mail, record all donations, and deposit them in previously established bank accounts. The DMA requires ATO to provide the City with a log containing the dollar amount of donated funds, the form of the donation, check number or tracking number, name of the donor, donor's designated purpose for the funds, donor's remittance address, copies of all cancelled checks, and copies of bank reconciliation statements for the account in which the funds are deposited. The agreement also requires ATO to provide to the City copies of all correspondence received in connection with donations, copies of correspondence between ATO and donors, and a summary of payments to beneficiaries that can be tied

back to the funds. The agreement further provides that ATO is an independent contractor, and the City does not have the legal right to control the details of the tasks performed by ATO pursuant to the agreement.

Believing that ATO has mishandled the funds, and because ATO has refused to release cash they claim to be legally entitled to, Appellees filed suit against ATO, the City, and others. Appellees' allegations against the City include tort claims for conversion, breach of fiduciary duty, and invasion of privacy, as well as claims for derivative liability for torts committed by other defendants on theories of aiding and abetting through assisting and participating and civil conspiracy. They also sought a declaratory judgment that the City's actions violated their rights to be secure from searches and seizures under Texas Constitution article one, section nine.

In its plea to the jurisdiction, the City contended that it is immune from suit arising out of its governmental functions. Specifically, it asserted the complained-of activities, its handling of mail sent to the Dallas Police Department, fall within the governmental function of police protection and control. The City further argued that Appellees have not pled that their claims fall within a waiver of the City's governmental immunity from suit. At the hearing on the plea, and in their brief, Appellees stated they withdrew the declaratory and constitutional claims. The trial court denied the City's plea to the jurisdiction. The City appealed that decision. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(8).

## Plea to the Jurisdiction

In four issues, the City contends the trial court erred in denying its plea to the jurisdiction because the City showed it was engaged in governmental functions and therefore immune from suit against it on Appellees' causes of action. Further, it argues, there is no statutory waiver of the City's governmental immunity. Appellees respond that the City was not engaged in governmental functions, but rather, the City's activities at issue are proprietary, and therefore the City is not immune.

STANDARD OF REVIEW

As an extension of sovereign immunity, governmental immunity protects municipalities from suit based on the performance of a governmental function as the state's agent. *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 741 (Tex. 2019). Absent a waiver of sovereign immunity, a governmental entity cannot be sued for its performance of a governmental function. *See id.* at 746. Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). The trial court's ruling on a plea to the jurisdiction is subject to de novo review. *Miranda*, 133 S.W.3d at 226. In reviewing a plea to the jurisdiction, we review the pleadings and any evidence relevant to the jurisdictional issue. *Id*. at 226-27. The plaintiff has the burden of alleging facts sufficient to demonstrate the trial court's jurisdiction. *Id.*

at 226.  If the pleadings illustrate incurable defects in jurisdiction, a plea to the jurisdiction is properly granted.  *Id*. at 226-27.

APPLICABLE LAW

Municipal corporations exercise their broad powers through two different roles: governmental and proprietary.  *Rosenberg Dev. Corp.*, 571 S.W.3d at 746.  Governmental functions are enjoined on a municipality by law and are given to it by the state, as part of the state's sovereignty, to be exercised in the interest of the general public.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a).  Where statutory terms are not defined, they are to be given their ordinary meaning.  TEX. GOV'T CODE ANN. § 311.011(a).  "Enjoin" means to prescribe, mandate, or strongly encourage.  *Enjoin*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Governmental functions also encompass activities that are closely related to or necessary for performance of the governmental activities designated by statute.  *See Smith v. City of League City*, 338 S.W.3d 114, 128 (Tex. App.—Houston [14th Dist.] 2011, no pet.).  Governmental functions are generally defined as those actions performed by a municipality that are "public in nature" and "in furtherance of general law for the interest of the public at large."  *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 776 (Tex. 2006).

Section 101.0215 of the Texas Civil Practice and Remedies Code contains non-exclusive lists of thirty-six governmental functions and three proprietary functions.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215.  If a function is designated in Section 101.0215

as governmental, for which the governmental entity enjoys immunity, we have no discretion to determine that it is proprietary. *See City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 33 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (op. on reh'g). Thus, in determining whether a city's actions are proprietary or governmental, we must first consider whether the action falls within one of the governmental functions enumerated in Section 101.0215(a). *See Town of Highland Park v. McCullers*, 646 S.W.3d 578, 596 (Tex. App.—Dallas 2021, no pet.) (Goldstein, J., concurring).

In contrast, when a municipality performs a proprietary function, it is subject to the same duties and liabilities as those incurred by private persons and corporations. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986). Proprietary functions are functions that a municipality may, in its discretion, perform for the benefit of the inhabitants of the municipality. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b); *see also Gates*, 704 S.W.2d at 739. Such functions are usually activities that can be, and often are, provided by private persons. Joe R. Greenhill & Thomas V. Murto III, *Governmental Immunity*, 49 Tex. L. Rev. 462, 463 (1971).

**Discussion**

The City contends it was acting pursuant to its governmental function of police protection and control. At the heart of Appellees' complaint is how the City handled mail sent to Dallas Police Department headquarters that included donations for the benefit of Senior Corporal Ahrens and the other slain officers. The City argues that its receipt and

handling of the mail at issue cannot be divorced from the tragic event that caused the mail to be sent in the first place, and, at the time of the officers' deaths, each was on official duty providing police protection and control. Further, the argument continues, the tragedy triggered an obligation on the City's part to provide an ongoing official response, including processing the mail containing donations. Thus, it contends, processing the mail received in response to the shootings is closely related to the governmental function of providing police protection and control and a necessary and essential component of that mission.

In support of this argument, the City explains that processing mail addressed to and received at police headquarters is a necessary part of providing police protection and control services because they receive mail regarding ongoing police matters and complaints about police officers, and police officers need to act on that information. It asserts that by contracting with ATO to handle the charitable function of processing and disbursing the donations, "permitting the ATO to exercise its discretion in how to manage and dispense the donations, the City ensured that it stayed in its governmental lane and allowed the ATO" to perform charitable functions.

The City's argument that, since the mail can contain correspondence directly relating to police matters processing the mail is a governmental function, is compelling. However, the police did not need to act on information contained in the subset of mail at issue here. The City's choices about how to receive and process the mail and donations

at issue here do not reflect typical police mail processing activity. *See City of Houston*, 444 S.W.3d at 33. Also, in the case of mail associated with the officers killed on July 7, 2016, the City deliberately offloaded the act of processing the mail. Additionally, the City's attempt to distinguish between its duty to ensure all mail delivered to DPD would be processed and what it called the "charitable function" of dividing and disbursing the donations undermines its argument that its acts were part of a governmental function. By entering into the DMA, the City extinguished its opportunity to rely on the argument that processing the mail at issue falls in the category of police protection and control and is a governmental function.

The City also argues that processing the mail received in response to the tragedy is closely related to the governmental function of providing police protection and control. Yet, a DPD assistant director explained in his affidavit that DPD did not have an established practice for how to handle such donations. We would expect the City to have established practices for providing police protection and control. Further, the argument might be more persuasive if the City had processed that mail instead of giving that task to ATO, a charitable organization, not a law enforcement agency. The act of entering into the DMA does not in itself constitute processing the mail. Privatizing a portion of its mail room procedures was not essential to the City's mail room activities or the provision of police service. *See Smith*, 338 S.W.3d at 128. We conclude that the City's actions regarding the mail and donations it received in response to the events of July 7, 2016 do not fall in

the statutory category of police protection and control. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(1).

We also determine that the City's actions do not fall within the general definition of governmental functions. No law required the City to contract with another entity to process the mail. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) ("governmental functions are enjoined on a municipality by law"). The mail and donations were intended for the families of the slain officers, and in some instances, the Dallas Police Department. The DMA specifically provided that ATO "will only disburse Funds from the accounts to legally authorized representatives of the Officers." Therefore, it cannot be said that the mail and donations, or the decision to contract with ATO to process them, were in the interest of the general public. *See id*. (governmental functions are exercised in the interest of the general public). Had the City not entered into the agreement with ATO, the City's employees would have been paid to process the mail associated with the slain officers. When ATO took over tasks, at no charge, that would otherwise have been performed by City employees, residents of the municipality benefitted. The City's actions were not exercised in the interest of the general public. Because the City's actions were not enjoined by law or exercised in the interest of the general public, its actions do not fall within the definition of governmental function. *See id.*

In its discretion, the City entered into the DMA, an act that was in the interest of City employees, the families of the slain officers, the inhabitants of the City of Dallas, and

others closely aligned with the City. Thus, when the City entered into an agreement with ATO to process the mail and donations received in response to the events of July 7, 2016 it engaged in a proprietary function. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b). Regarding those actions, the City is therefore subject to the same duties and liabilities as those incurred by private persons and corporations. *Gates*, 704 S.W.2d at 739. We conclude that the trial court did not err in denying the City's plea to the jurisdiction. We overrule the City's first and second issues.

The City's third and fourth issues concern Appellees' request for declaratory judgment of their rights under the Texas Constitution. The City asserts that the denial of its plea to the jurisdiction should be reversed as to that claim. Appellees stated on the record at the hearing on the plea to the jurisdiction that they withdrew this claim. They reiterated that statement in their brief. Because that claim no longer presents a justiciable controversy, it is moot. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018). We cannot render an advisory opinion as to this claim. *See Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021). We dismiss the City's third and fourth issues as moot.

We affirm the trial court's denial of the City's plea to the jurisdiction.


STEVE SMITH
Justice

Before Chief Justice Gray
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray dissents)
Affirmed
Opinion delivered and filed April 11, 2024
[CV06]

